Miscellaneous Docket No. _____

_____

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

_____

IN RE FIDELITY NATIONAL INFORMATION SERVICES, INC., FISERV, INC,
JACK HENRY & ASSOCIATES, INC., ET AL.

*Petitioners*

_____

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas, Marshall Division, in Civil Action Nos. 2:13-cv-00431,
2:13-cv-00432, and 2:13-cv-00433

_____

**PETITION FOR WRIT OF MANDAMUS**

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

STATEMENT OF RELATED CASES ....................................................... vi

I.    INTRODUCTION ............................................................................ 1

II.   STATEMENT OF RELIEF SOUGHT ............................................ 2

III.  STATEMENT OF THE ISSUE ....................................................... 2

IV.   STATEMENT OF FACTS ............................................................... 2

    A.   District Court Litigation Involving the Ballard Patents ......................... 2

    B.   DataTreasury's Litigation Business ...................................... 4

    C.   CBM Review of the Ballard Patents ...................................... 5

    D.   Petitioners Filed Motions to Stay Early in the Litigation .................... 7

    E.   Instead of Acting on Petitioners' Motions to Stay, the District Court Entered a Tight Schedule, Setting Trial for April 2015 ........................................................................ 9

    F.   Petitioners Sought Alternative Means for Relief ................................ 11

V.    ARGUMENT .................................................................................. 13

    A.   Petitioners Lack Adequate Alternative Means to Obtain an Immediate Stay ................................................................... 14

    B.   Petitioners Have a Clear and Indisputable Right to a Stay ................ 18

        1.   The Instituted CBM Proceedings Will "More Likely Than Not" Moot DataTreasury's Entire Cause of Action ...................................................................... 19

        2.   Given the Due Dates for Discovery and Trial, Quick Action by the Court Will Prevent Significant Waste ............... 20

i

3.    DataTreasury Will Not Be Harmed by a Stay Because CBM Proceedings Are Expedited, and Petitioners Gain No Tactical Advantage from a Stay ................................. 21

4.    A Stay Will Reduce the Burden of Litigating Patents that Are "More Likely Than Not" Unpatentable ..................... 24

C.    Alternatively, this Court Can Deem That the Discovery Order Subsequently Entered by the Trial Court Is an Implied Denial of the Stay Motion, and Grant Leave to File an Interlocutory Appeal .......................................................... 26

VI.    CONCLUSION ............................................................................. 27

# TABLE OF AUTHORITIES

PAGE(S)

**Federal Cases**

*Addington v. Farmer's Elevator Mut. Ins. Co.*,
650 F.2d 663 (5th Cir.), *cert. denied*, 454 U.S. 1098 (1981) ............................26

*AT&T Intellectual Prop. I v. TiVo, Inc.*,
774 F. Supp. 2d 1049 (N.D. Cal. 2011)............................................................21

*Cheney v. U.S. Dist. Court for D.C.*,
542 U.S. 367 (2004)..........................................................................................13

*DataTreasury Corp. v. Austin Bancorp, Inc.*
No. 6:11-cv-470 (E.D. Tex. 2011)....................................................................22

*DataTreasury Corp. v. First Data Corp.*,
No. 5:02-cv-94 (E.D. Tex. 2002)........................................................................4

*DataTreasury Corp. v. Ingenico S.A.*,
No. 5:02-cv-95 (E.D. Tex. 2002)........................................................................4

*DataTreasury Corp. v. J.P. Morgan Chase Co.*,
No. 5:02-cv-124 (E.D. Tex. 2002)......................................................................4

*eBay Inc. v. MercExchange LLC*,
547 U.S. 388 (2006)..........................................................................................23

*Hirsch v. Burke*,
40 F.3d 900 (7th Cir. 1994) ..............................................................................15

*In re Ameranth Patent Litig. Cases*,
No. 3:11-cv-1810, 2013 WL 7144380 (S.D. Cal. Nov. 26, 2013) ....................17

*In re Mark Indus.*,
751 F.2d 1219 (Fed. Cir. 1984) .........................................................................13

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011) .........................................................................14

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) .........................................................................14

*In re Princo Corp.*,
  478 F.3d 1345 (Fed. Cir. 2007) .......................................................................14

*In re Regents of the Univ. of Cal.*,
  964 F.2d 1128 (Fed. Cir. 1992) .......................................................................13

*In re School Asbestos Litigation*,
  977 F.2d 770 (3d Cir. 1992) ...........................................................................15

*In re Sharon Steel Corp.*,
  918 F.2d 434 (3d Cir. 1990) ...........................................................................15

*In re Spalding Sports Worldwide, Inc.*,
  203 F.3d 800 (Fed. Cir. 2000) .......................................................................13

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .......................................................................16

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010) .......................................................................14

*Insur. Co. v. Comstock*,
  83 U.S. 258 (1872) .......................................................................................13

*Intertainer, Inc. v. Hulu, LLC*,
  No. 2:13-cv-5499, 2014 WL 466034 (C.D. Cal. Jan. 24, 2014) .................17, 21

*La Buy v. Howes Leather Co.*,
  352 U.S. 249 (1957) .......................................................................................17

*Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*,
  922 F. Supp. 2d 486 (D. Del. 2013)..................................................................24

*Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*,
  541 Fed. Appx. 964 (Fed. Cir. Aug. 16, 2013) (unpublished) ............................26

*MonoSol Rx, LLC v. BioDelivery Scis. Int'l, Inc.*,
  No. 3:10-cv-5695, 2012 WL 762501 (D.N.J. Mar. 7, 2012)...............................22

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
  549 F.3d 842 (Fed. Cir. 2008) .......................................................................14

*Sightsound Techs., LLC v. Apple, Inc.*,
No. 2:11-cv-01292, 2013 WL 2457284 (W.D. Pa. June 6, 2013)......................24

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
No. 2:13-CV-00011, 2014 WL 94371 (E.D. Tex. Jan 9, 2014) .........................17

**Federal Statutes**

28 U.S.C. § 1651(a) .............................................................................................13

35 U.S.C. § 101................................................................................5, 6, 19, 20, 25

35 U.S.C. § 112................................................................................5, 6, 19, 20, 25

35 U.S.C. § 326(a)(11)........................................................................................22

**State Statutes**

All Writs Act......................................................................................................13

**Rules**

Fed. R. Civ. P. 30(b)(6)....................................................................................9, 10

**Other Authorities**

16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice
& Procedure *Jurisdiction* § 3933, at 218-19 (1977)...........................................13

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) .......................................................8

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ...........................................8, 18, 24

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) .............................................5, 6, 24

*Zillow, Inc. v. Trulia, Inc.*,
No. 2:12-cv-1549, 2013 WL 5530573.............................................17, 21, 23, 24

## STATEMENT OF RELATED CASES

No appeal in or from the same civil action was previously before this Court or any other appellate court.

## I.     INTRODUCTION

As part of the America Invents Act ("AIA"), Congress created a transitional program for post-grant review of covered business method ("CBM") patents by the Patent Trial and Appeal Board ("PTAB").  Because CBM review is intended to provide an alternative to litigation involving business-method patents, Congress enacted a special four-factor test that district courts must apply when analyzing a motion to stay litigation pending resolution of CBM proceedings.  The test is heavily weighted toward granting a stay so that parties can avoid duplication, inconsistent results, and the expense of district court litigation during the pendency of the CBM proceedings.  Further, to encourage uniform application of the four-factor test, Congress provided for immediate interlocutory appeal of a district court's stay decision and de novo review by this Court on appeal.

Since enactment of the AIA, nearly all district courts addressing the issue have granted motions seeking a stay of district court litigation co-pending with CBM review.  In this case, however, more than five months have passed since Petitioners first sought a stay.  Unfortunately, the district court has neither granted nor denied Petitioners' requests.  Instead, the district court entered a tight schedule, setting aggressive discovery deadlines and a trial date that is less than one year away.  Through its inaction, the district court effectively denied Petitioners' motions and prohibited them from seeking an interlocutory appeal in this Court.

As a result, Petitioners find themselves facing burdensome dual-track litigation, something Congress specifically sought to avoid. Petitioners are left with no effective remedy other than the requested writ of mandamus. To address this recurring problem, this Court should grant the writ and order the district court to stay the litigation. Indeed, as explained in detail below, each of the four stay factors strongly favors a stay in this proceeding, making Petitioners' rights to the writ clear and indisputable.

## II.    STATEMENT OF RELIEF SOUGHT

Petitioners respectfully request that the Court grant this Petition and direct the district court to stay the litigation pending the final resolution of Covered Business Patent Review Nos. CBM2014-00020 and CBM2014-00021.[1]

## III.    STATEMENT OF THE ISSUE

Whether this Court should direct the district court to stay this action pursuant to section 18(b) of the Leahy-Smith AIA.

## IV.    STATEMENT OF FACTS

### A.    District Court Litigation Involving the Ballard Patents

These actions commenced when DataTreasury Corporation ("DataTreasury") filed three lawsuits, No. 2:13-cv-00431 ("the Fiserv Action")

---

[1] In the district court, some defendants sought a stay pending the outcome of other post-grant proceedings involving the Ballard patents. Petitioners do not waive their rights to seek further relief based on other post-grant proceedings.

(Ex. A), No. 2:13-cv-00432 ("the FIS Action") (Ex. B), and No. 2:13-cv-00433 ("the Jack Henry Action") (Ex. C), in the Eastern District of Texas for alleged infringement of related U.S. Patent Nos. 5,910,988 ("the '988 patent") (Ex. D) and 6,032,137 ("the '137 patent") (Ex. E) (collectively, the "Ballard Patents"). DataTreasury's three lawsuits collectively name 135 defendants,[2] including many local and community banks, holding companies, and credit unions.

The Ballard Patents are business-method patents that relate to processing documents and data from "sale, business, banking and general consumer transactions." (Ex. D, col.1, ll.6-9.) In its Complaints, DataTreasury described the Ballard Patents as being "foundational to modern day, image-based check processing," and touted that "[d]ozens of prior litigants have spent hundreds of millions of dollars attempting to invalidate the Ballard Patents or to prove them unenforceable." (*See*, *e.g*., Ex. B. ¶¶ 1, 4.) Exemplary claim 26 of the '988 patent recites a business method that includes several steps:

> 26.    A method for central management, storage and verification of remotely captured paper transactions from documents and receipts comprising the steps of:
>
> capturing an image of the paper transaction data at one or more remote locations and sending a captured image of the paper transaction data;

---

[2] DataTreasury named some defendants in multiple suits. The number of *entities* involved in the suits is 127.

managing the capturing and sending of the transaction data;

collecting, processing, sending and storing the transaction data at a central location;

managing the collecting, processing, sending and storing of the transaction data;

encrypting subsystem identification information and the transaction data; and

transmitting the transaction data and the subsystem identification information within and between the remote location(s) and the central location.

(Ex. D, col.25, ll.11-28.)

### B.    DataTreasury's Litigation Business

DataTreasury is a privately held company in the business of "patent litigation and licensing." (Ex. F.) Although it was founded in New York, it moved its corporate headquarters to Plano, Texas, to be "in close proximity to its Texas-based legal counsel." (*Id.*) DataTreasury filed its first trio of lawsuits alleging infringement of the Ballard Patents in the Eastern District of Texas in 2002. *DataTreasury Corp. v. First Data Corp.*, No. 5:02-cv-94 (E.D. Tex. 2002); *DataTreasury Corp. v. Ingenico S.A.*, No. 5:02-cv-95 (E.D. Tex. 2002); *DataTreasury Corp. v. J.P. Morgan Chase Co.*, No. 5:02-cv-124 (E.D. Tex. 2002). Since that time, DataTreasury has sued over 200 banks and other entities, including the 132 community banks, credit unions, and holding companies in these

consolidated cases (50 in the Fiserv Action, 34 in the FIS Action, and 48 in the Jack Henry Action). (*See* Ex. A; Ex. B; Ex. C.)  DataTreasury's press releases have touted its ability to fight litigation targets in high-cost and burdensome litigation in the Eastern District of Texas. (Ex. G; Ex. H.)

### C.    CBM Review of the Ballard Patents

On October 25, 2013, Fidelity National Information Services, Inc. ("FIS") filed two CBM petitions at the U.S. Patent and Trademark Office ("PTO"), Post-Grant Proceeding Nos. CBM2014-00020 (Ex. I) and CBM2014-00021 (Ex. J). The CBM petitions requested that the PTO review the patentability of the Ballard Patents under 35 U.S.C. §§ 101 and 112.  All 135 remaining defendants in these three actions have agreed to be bound by the estoppel provisions of AIA § 18(a)(1)(D) to the extent those provisions apply to FIS.

In its petitions, FIS noted that the Ballard Patents fit squarely within the definition of "covered business method patents."  Indeed, the Ballard Patents *are the very patents* that inspired Congress to create the CBM procedure.  Senator Jon Kyl called out the Ballard Patents by name and number when discussing the CBM legislation, explaining: "This section grew out of concerns originally raised in the 110th Congress about financial institutions' inability to take advantage of the authority to clear checks electronically pursuant [sic] the Check Clearing for the 21st Century Act . . . without infringing the so-called Ballard patents, patents

number 5,910,988 and 6,032,137." 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl). Senator Kyl stated that "[b]oth of these [Ballard] patents are obviously business-method patents, and it is difficult to see how they were even novel and nonobvious and otherwise valid under the more liberal State Street standard [for patent-eligible subject matter under § 101], much less how they could survive the strictures of Bilski." *Id.*

On April 29, 2014, the PTAB found each and every claim in the Ballard Patents "more likely than not unpatentable" and instituted the CBM proceedings. Specifically, the PTAB found that "claims 1-67 [of the '137 patent] are more likely than not unpatentable under 35 U.S.C. § 101 and unpatentable under 35 U.S.C. § 112 for lack of written description." (Ex. I at 2.) As for the '988 patent, the PTAB found that "claims 1-123 are more likely than not unpatentable under 35 U.S.C. § 101, and [that] claims 1-49 and 51-69, are more likely than not, unpatentable under 35 U.S.C. § 112 for lack of written description." (Ex. J at 2.)

In both decisions, the PTAB reasoned that the claims, when considered as a whole, are directed to the abstract idea of transferring information from one location to another where the transferred information is unreadable without a secret decoder key. The PTAB further found that the claims do not have meaningful limitations to avoid preempting this basic concept, stating: "Although the claims are limited to capturing images of paper transaction data, to be meaningful, the

6

claims must contain more than mere field-of-use limitations, tangential references to technology, insignificant pre- or post-solution activity, ancillary data-gathering steps, or the like." (Ex. I at 18; Ex. J at 20.)  The PTAB also found that it is more likely than not that the Ballard Patents' specifications do not describe encrypting "subsystem identification information," as required by claims 1-67 of the '137 patent and claims 1-41 and 51-69 of the '988 patent.  (Ex. I at 20; Ex. J at 21.)

### D.    Petitioners Filed Motions to Stay Early in the Litigation

On December 18, 2013, prior to any scheduling conference in the case, defendants from the FIS Action filed a motion to stay the district court's proceedings pending resolution of the CBM petitions.  (*See* Ex. K.)  Defendants from the Jack Henry Action filed a similar motion to stay on January 2, 2014, as did defendants from the Fiserv Action on January 13, 2014.  (*See* Ex. L; Ex. M.)  At the time Petitioners filed their motions to stay, the district court had not issued a scheduling order and no discovery had occurred.

The three motions to stay rely on the statutory framework created by Congress for stays of district court cases copending with CBM proceedings.  AIA § 18(b)(1).  That framework provides that courts "shall" consider four factors:

(A)    Whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B)    Whether discovery is complete and whether a trial date has been set;

7

(C)    Whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D)    Whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.*  In enacting this framework, Congress stated that the fourth factor "places a very heavy thumb on the scale in favor of [a] stay" and that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay."  157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Schumer).

To ensure proper and prompt application of the CBM review stay provision of AIA §18(b)(1), Congress enacted AIA § 18(b)(2), which allows a party to "take an immediate interlocutory appeal from a district court's decision" on a CBM-stay motion.  It further provides that "[t]he United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo."  AIA § 18(b)(2).  Senator Schumer explained: "A de novo review is central to the purpose of the interlocutory appeal provision in the Schumer-Kyl amendment, which is to ensure consistent application of standards and precedents across the country and to avoid one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

**E.    Instead of Acting on Petitioners' Motions to Stay, the District Court Entered a Tight Schedule, Setting Trial for April 2015**

The district court did not decide Petitioners' motions to stay. Instead, the district court issued its Docket Control Order on February 19, 2014. (*See* Ex. N.) The district issued the Order over Petitioners' objection that the Order "should not be entered until the Pending [Stay] Motions are decided and that the deadline requiring the Parties to submit the Proposed Order is premature in view of the Pending Motions." (Ex. V) The Docket Control Order set dates for discovery to begin on February 21, 2014; Invalidity Contentions to be due on June 6, 2014; claim construction to begin on July 7, 2014, with the *Markman* hearing set for September 26, 2014; and trial to begin on April 13, 2015. (Ex. N.) At this point, those dates are fast approaching, and the parties are now exchanging discovery requests and taking and defending depositions.

Indeed, without a stay, DataTreasury was free to serve interrogatories applicable to all 135 defendants and notice over 75 oral and videotaped depositions under Fed. R. Civ. P. 30(b)(6). Each "initial" 30(b)(6) notice has 50 topics and subtopics (*see* Ex. O), totaling up to 3,800 topics and subtopics across the defendants. Exemplary 30(b)(6) topics 2(a) and 2(b) are just two of the 50 deposition topics and illustrate the complexity, expense, and time-consuming nature of the immediate discovery sought by DataTreasury. In these two topics,

DataTreasury asks Petitioners to identify all software by name, number, type, version number, hosting computer, third-party vendor, supplier, and location, and all hardware by model name, number, type, third-party vendor, supplier, and location, that Petitioners have used, are using, or expect to use in the operation of each product or service—all the way down to the "data lines." (Ex. O at 11.) It has been estimated that the parties will engage in 2-3 depositions per day through June 23, 2014, to complete these depositions on time. (*See* Ex. R at 5.) And these depositions are only the initial volley. DataTreasury's witness list from its initial disclosures includes approximately 2,400 potential witnesses (Ex. P) and DataTreasury has 2,600 hours of total deposition time for fact and third-party witnesses (Ex. Q).

Additionally, the tight scheduling order has required Petitioners to move forward with discovery as they cannot afford to wait on a decision from the district court on the pending motions to stay. There are at least 22 outstanding 30(b)(6) notices of deposition served by the Petitioners relating to DataTreasury's infringement theories. None of these depositions would be necessary if the case was stayed.

While the multiple motions to stay remain pending, the district court also scheduled document production to begin on June 6, 2014, with rolling production of emails completed by July 25, 2014, and document discovery largely completed

by August 18, 2014.  (*See* Ex. N; Ex. Q at 3.)  Based on DataTreasury's track record from prior litigations, document discovery will be extensive.  Prior litigation involving the Ballard Patents—the largest of which involved just over 50 defendants—required the production and review of tens of millions of pages of documents.  This case involves 135 defendants.

The opening claim construction brief is due on August 19, 2014, just 24 hours after the August 18 deadline for substantial completion of document discovery, with responsive briefs due on September 2, 2014, a reply brief due on September 9, 2014, and the *Markman* hearing set for September 26, 2014.  From there, the litigation dates continue to stack on top of each other all the way until trial in April 2015.  (Ex. N.)

### F.    Petitioners Sought Alternative Means for Relief

After waiting months for the district court to act on their stay motions, Petitioners unsuccessfully sought alternative means to obtain the relief requested. First, Petitioners filed an emergency stay motion on April 4, 2014.  (*See* Ex. R.) The emergency motion requested expedited briefing and waived Petitioners' rights to file a reply brief to DataTreasury's opposition.  (*See id.*)  The district court again took no action on Petitioners' requests for a stay and has not even set a hearing.  In total, Petitioners have filed four motions to stay and nine notifications related to their motions.  *See*, Dkt. No. 329, Lead Case No. 2:13-cv-0\0431-JRG-RSP.

Because the district court did not rule on Petitioners' emergency stay motion, Petitioners sought to negotiate an extension with DataTreasury, explaining that they had "a significant concern [about] the substantial cost associated with the depositions that have been noticed, when such costs might be avoided if the Court determines that a stay should be entered pending completion of the Patent Office proceedings." (Ex. S.) Petitioners suggested that "[o]ne way to address that concern would be to delay those depositions until the Court makes that determination." (*Id.*) DataTreasury responded that it was "not amenable to [Petitioners'] proposal" and explained that, because "the Court put us on a tight schedule and strongly indicated that it expects us to live up to it, we cannot agree to postpone any discovery." (*Id.*)

After the PTO instituted the CBM proceedings, Petitioners promptly apprised the district court on April 30, 2014, of the institution and asked DataTreasury whether it "would be willing to withdraw its opposition to Defendants' Emergency Motion to Stay Proceedings." (Ex. T.) But DataTreasury again refused, replying that "[g]iven the tight discovery schedule[,] DataTreasury is unwilling to withdraw its opposition to the Emergency Motion to Stay." (*Id.*)

## V.    ARGUMENT

The Federal Circuit has broad jurisdiction and discretion to issue writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to correct a "clear abuse of discretion or 'usurpation of judicial power.'" *In re Mark Indus.*, 751 F.2d 1219, 1222 (Fed. Cir. 1984) (citations omitted); *In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1130 (Fed. Cir. 1992).  Mandamus may be used not only to confine a lower court to a lawful exercise of its prescribed authority, but also to compel it to "decide a pending case." *Insur. Co. v. Comstock*, 83 U.S. 258, 270 (1872).  In fact, one of "the clearest traditional" uses of mandamus is to compel a court "to act when it had no power to refuse [to act]."  16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure *Jurisdiction* § 3933, at 218-19 (1977).  Under applicable law, the petitioner carries the burden of demonstrating that he has "no other adequate means to attain the relief he desires," and that he has a "clear and indisputable" right to the writ.  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 381 (2004) (citations omitted); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 804 (Fed. Cir. 2000).  The issuing court must also be satisfied that the writ is "appropriate under the circumstances."  *Cheney*, 542 U.S. at 381.

Although reserved for extraordinary situations, this Court has issued writs as appropriate to reduce litigation burdens on parties.  For example, this Court has granted several writs of mandamus to vacate orders denying transfer from the

13

Eastern District of Texas to other, more efficient forums. *See, e.g.*, *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) ("[M]aintaining trial in the Eastern District of Texas would similarly require witnesses to undergo the *cost, time, and expense* of travel to attend trial, which would be significantly minimized if this case were transferred to the Western District of Washington." (emphasis added)); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010); *In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009).

### A.     Petitioners Lack Adequate Alternative Means to Obtain an Immediate Stay

Petitioners have repeatedly asked the district court to stay the cases pending the CBM proceedings, sought an emergency stay, and requested extensions from DataTreasury—all without success. Because the district court has not ruled on the Petitioners' motions, the district court has effectively denied them. *See, e.g.*, *In re Princo Corp.*, 478 F.3d 1345, 1349 (Fed. Cir. 2007) (district court failed to rule on a motion for a stay to be continued, "thus effectively denying it"); *see also Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 846 (Fed. Cir. 2008) (Federal Circuit has jurisdiction to review activity that has the "practical effect" of denying a motion for a preliminary injunction). At the same time, the district court's inaction has also effectively denied Petitioners' rights to an immediate interlocutory appeal under AIA § 18(b)(2), leaving them with no option but to file this petition. Indeed, with the effective denial of their statutory right to an

interlocutory appeal, Petitioners have no remedy other than the requested writ of mandamus.

And, mandamus is an appropriate remedy when a district court refuses to rule on a motion, effectively denying it. In *In re School Asbestos Litigation*, 977 F.2d 770, 792-93 (3d Cir. 1992), the appellate court held that mandamus is a "proper means to require a district court[,] that has refused to consider the merits of an issue[,] to do so." Specifically, the court considered "whether a writ of mandamus is a proper remedy when a district judge arbitrarily refuses to rule on a summary judgment motion," and "conclude[d] that it is." The court explained:

> The chief harm to the unsuccessful moving party is that it must bear the expense of going to trial. But whereas it is inevitable that judges will make mistakes from time to time when a ruling on summary judgment motions, the error of refusing to rule on the merits of such a motion is entirely avoidable.

*Id*. at 793; *see also, e.g.*, *In re Sharon Steel Corp.*, 918 F.2d 434, 436-37 (3d Cir. 1990) ("By refusing to rule on ARCO's motion to reconsider, the district court in the present case has failed to exercise its judicial power, which in turn has inhibited this Court's exercise of appellate jurisdiction. The issuance of a writ of mandamus is therefore appropriate. . . . Not only is the district court's inaction an unexplained abdication of judicial power, but it severely restricts ARCO's right to an appeal by defeating our jurisdiction"); *cf. Hirsch v. Burke*, 40 F.3d 900, 905 (7th Cir. 1994)

("Had counsel been that concerned about the district court's delay he could have filed a writ of mandamus ordering the district court to expedite its opinion.").

Waiting for the district court to act is not a reasonable option either because, as more time passes, Petitioners continue to suffer prejudice and Congress's express intent in enacting AIA § 18(b)(2) to avoid the expense of burdensome dual-track litigation is thwarted. Petitioners are in the impossible position of being forced to complete an extraordinary amount of work in a compressed time under the district court's scheduling order. Yet, the more work they complete, the more damage they incur by expending resources litigating patents the PTAB has already ruled are likely invalid. The only reasonable solution is for this Court to order the district court to stay the litigation.

Furthermore, as this Court recognized in *TS Tech*, the "no other means" requirement is not intended to ensure that a petitioner exhaust every possible avenue of relief at the district court before seeking mandamus relief. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008). "Rather, the purpose of the 'no other means' requirement as explained by the Supreme Court is to 'ensure that the writ will not be used as a substitute for the regular appeals process.'" *Id.* (quoting *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004)).

Here, the district court's failure to rule has upset the regular appeal process. In the normal course, district courts either grant or deny a CBM-related stay

motion within a reasonable time period, allowing the parties to seek an interlocutory appeal.  Indeed, the vast majority of district courts facing this same issue have granted motions to stay, allowing the non-moving party to seek an interlocutory appeal if desired.  *See, e.g.*, *Zillow, Inc. v. Trulia, Inc.*, No. 2:12-cv-1549, 2013 WL 5530573 at *8 (granting a stay pending CBM review less than one month after the motion was filed); *Intertainer*, 2014 WL 466034, at *2 (granting a stay pending CBM review prior to PTAB decision instituting CBM; the stay was requested on December 26, 2013, and the court issued its ruling less than one month later on January 24, 2014); *In re Ameranth Patent Litig. Cases*, No. 3:11-cv-1810, 2013 WL 7144380 (S.D. Cal. Nov. 26, 2013) (granting a stay pending CBM review approximately two months after the motion was filed and prior to PTAB decision instituting CBM).

This Court should grant this petition to prevent a potentially recurring wrong.  *See, e.g.*, *La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957) (allowing mandamus to correct one instance of a significant erroneous practice that the appellate court finds is likely to recur); *VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011, 2014 WL 94371 (E.D. Tex. Jan 9, 2014) (waiting seven months before denying motion for stay pending completion of CBM review proceedings).  Not acting on a motion to stay can be more damaging than an outright denial of the stay, since a denial triggers an immediate right to appeal.  As

17

Senator Schumer explained, AIA § 18(b)(2) provides for an interlocutory appeal and de novo review by this Court "to ensure consistent application of standards and precedents across the country and to avoid one particular court with a favorable bench becoming the preferred venue of business method patent plaintiffs." 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer).

By scheduling discovery, claim construction, and a trial date instead of ruling on Petitioners' stay requests, the district court avoided an interlocutory appeal and forced Petitioners to continue to engage in expensive, burdensome dual-track proceedings, directly contrary to the favorable stay provisions in AIA § 18(b)(2). The Court should grant this Petition to correct these errors and prevent further harm.

### B.    Petitioners Have a Clear and Indisputable Right to a Stay

Petitioners have also demonstrated a "clear and indisputable" right to a writ of mandamus. Each of the stay factors in AIA § 18 weighs heavily in favor of a stay:

(1)    FIS's CBM proceedings will simplify the issues in the district court cases and "more likely than not" moot DataTreasury's cause of action;

(2)    Discovery has already begun but is not over, and trial is set for April 2015. Quick action by this Court or the district court can avert significant harm due to unnecessary and costly discovery, substantive district court proceedings, and trial;

(3)    Issuance of the stay will not injure DataTreasury because the CBM proceedings are fast and DataTreasury does not practice the Ballard Patents; and

18

(4)    The stay will reduce the substantial litigation burden that DataTreasury seeks to impose on Petitioners and the judicial system.

### 1.    The Instituted CBM Proceedings Will "More Likely Than Not" Moot DataTreasury's Entire Cause of Action

The first stay factor—whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial—favors a stay. The PTAB has determined that "more likely than not" all the claims in the Ballard Patents are unpatentable under both § 101 and § 112. If the PTAB maintains this position, its decision will likely moot DataTreasury's entire cause of action, either on the eve of trial or shortly after. It would be highly inefficient for the parties and the district court to move forward with litigation only to have the patent claims at issue invalidated, canceled, or changed.

Furthermore, AIA § 18(a)(1)(D) estops the petitioner from later asserting "that the claim is invalid on any ground that the petitioner raised during [the CBM] proceeding." All of the remaining defendants have agreed to this same scope of statutory estoppel applicable to FIS if a stay is granted. Therefore, the §§ 101 and 112 issues raised in the CBM petitions need not be addressed by the district court at all.

Finally, regardless of the outcome, the district court will still greatly benefit from development of the parties' arguments and the PTAB's analysis in the CBM review proceedings during a stay. The review proceedings are likely to provide

guidance not only on the §§ 101 and 112 issues, but also on the scope of the claims, as DataTreasury may well make statements that shed light on proper construction.    In sum, because CBM review will simplify, streamline, or completely eliminate the district court litigation, this factor weighs heavily in favor of a stay.

### 2.    Given the Due Dates for Discovery and Trial, Quick Action by the Court Will Prevent Significant Waste

The second factor—whether discovery is complete and a trial date has been set—substantially favors Petitioners.  Fact discovery closes December 10, 2014; expert discovery closes December 18, 2014; and jury selection is set for April 13, 2015.  Although discovery has commenced, quick action by this Court will save the parties much of the expense of fact discovery, claim construction, and expert discovery, and spare the court and the parties from participating in a trial on patents that the PTO has now determined are more likely than not unpatentable and that will likely be invalidated, cancelled or changed.

It is also worth noting that FIS filed its CBM petitions and moved to stay the litigation before any conference with the court had occurred, before the Docket Control Order had been entered, and before any discovery had been conducted. Jack Henry and Fiserv likewise filed their motions to stay prior to the entry of the Docket Control Order and before discovery had occurred.    To the extent DataTreasury asserts that this factor favors denial of a stay because a trial date was

subsequently set and fact discovery subsequently commenced, this Court should reject DataTreasury's argument because the district court's delay in acting on Petitioners' motions should not cause a factor to weigh against Petitioners.

### 3. DataTreasury Will Not Be Harmed by a Stay Because CBM Proceedings Are Expedited, and Petitioners Gain No Tactical Advantage from a Stay

The third stay factor—whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party—also favors a stay. A stay will not prejudice, let alone unduly prejudice, DataTreasury. But the failure to grant a stay will substantially prejudice Petitioners.

Lower courts addressing this issue have repeatedly found that the time necessary for an administrative-review process does not constitute, by itself, undue prejudice to the nonmovant or present a tactical advantage to the movant. *See, e.g.*, *AT&T Intellectual Prop. I v. TiVo, Inc.*, 774 F. Supp. 2d 1049, 1054 (N.D. Cal. 2011) ("[D]elay inherent in the reexamination process does not constitute, by itself, undue prejudice." (citation omitted)); *Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-5499, 2014 WL 466034, at *2 (C.D. Cal. Jan. 24, 2014) (granting a stay in litigation copending with a CBM after finding no undue prejudice); *Zillow,* 2013 WL 5530573, at *7 (W.D. Wash. Oct. 7, 2013) ("as a result of the delay inherent in any PTO reexamination or review process, [patentee] may suffer some prejudice,"

21

but "[t]he court simply does not view the possibility of prejudice here to be undue").

This rule is especially true here because CBM proceedings are specifically designed for speed. Unless special circumstances exist, the PTAB *must* issue its final decision within one year of the date of institution. 35 U.S.C. § 326(a)(11). Moreover, DataTreasury has not sought to vigorously prosecute or accelerate its infringement allegations. DataTreasury waited more than a decade from when the Ballard Patents issued to file the present lawsuits against the defendants. For example, DataTreasury admits that it has known of Fiserv. Inc.'s alleged infringement since at least as early as *DataTreasury Corp. v. Austin Bancorp, Inc.,* No. 6:11-cv-470 (E.D. Tex. 2011) —which was filed years ago on September 8, 2011. *See* Ex. A at ¶ 114 ("Defendant Fiserv has been involved in repeated litigation with DataTreasury, in which the Ballard Patents were asserted."). Yet, DataTreasury purposefully elected to wait until only recently to assert its alleged rights against defendants. DataTreasury will not be prejudiced by waiting another year, especially where the PTO proceedings will either moot or simplify the issues in district court proceedings.

DataTreasury is also not prejudiced from a remedy standpoint. DataTreasury will have access to the same remedies irrespective of whether the district court institutes a stay. *See MonoSol Rx, LLC v. BioDelivery Scis. Int'l,*

22

*Inc.*, No. 3:10-cv-5695, 2012 WL 762501, at *10 (D.N.J. Mar. 7, 2012) (noting that "all of Plaintiff's legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy").

In opposing Petitioners' motions to stay, DataTreasury asserted that "a stay will unduly prejudice DataTreasury's ability to timely enforce its soon-to-expire patent rights by likely eliminating its right to any injunctive relief" and "potentially result[] in a loss of evidence." (Ex. U at 2.) But DataTreasury's argument rings hollow as DataTreasury has not sought a preliminary injunction, which "undermine[s]" its assertions of undue prejudice. *See Zillow*, 2013 WL 5530573, at *7. DataTreasury likely did not seek a preliminary injunction because it knows that, as a nonpracticing entity that does not compete with any of the defendants, its chances of getting one are unlikely under *eBay Inc. v. MercExchange LLC*, 547 U.S. 388 (2006), and its progeny. For the same reasons, DataTreasury is unlikely to obtain a permanent injunction, assuming the Ballard Patents survive the CBM proceedings, which they likely will not. The only things that DataTreasury is set to lose from a stay and the CBM proceedings are two patents that it never should have received in the first place.

Conversely, Petitioners are being forced to expend significant resources defending a claim for infringement of patents that the PTAB has already

recognized are likely not patentable. Thus, the *only* parties who will be prejudiced are the defendants if this Court does not grant this petition.

### 4. A Stay Will Reduce the Burden of Litigating Patents that Are "More Likely Than Not" Unpatentable

The fourth stay factor—whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court—strongly favors Petitioners. Congress adopted this fourth factor particularly for CBM-related stays "to ease the movant's task of demonstrating the need for a stay." *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489-90 (D. Del. 2013). As Congress explained:

> Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time. This is unacceptable, and would be contrary to the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation.

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer); *see also Progressive Casualty Ins. Co.,* 2013 WL 1662952, at *3, *8 (citing 157 Cong. Rec. S1364); *Zillow,* 2013 WL 5530573, at *3, *8 (W.D. Wash. Oct. 7, 2013); *Markets-Alert Pty. Ltd. v. Bloomberg Fin. L.P.,* 922 F. Supp. 2d 486, n.14 (D. Del. 2013); *Sightsound Techs., LLC v. Apple, Inc.,* No. 2:11-cv-01292, 2013 WL 2457284, at *2-3 (W.D. Pa. June 6, 2013).

Here, there is little question that a stay will reduce the burden of litigation on the parties and on the court. DataTreasury has sued 135 defendants, issued 76

deposition notices so far, and plans to use some 2,600 hours of deposition time. Using DataTreasury's prior litigation involving the Ballard Patents as a predictor, the expected number of documents to be produced across all defendants could reach over 100 million pages. The cost of reviewing, producing, and storing this volume of documents could reach into the millions as well. And, at the end of the day, this document production will "more likely than not" achieve nothing.

Moreover, granting a stay will unquestionably reduce the burden of litigation on the parties and the court because, absent a stay, they would be required to prepare for and conduct a *Markman* hearing and trial. A stay will also spare the parties the burden of litigating the patentability of the Ballard Patents before the district court and the PTAB at the same time. Likewise, CBM review will reduce the district court's burden by allowing the PTAB to resolve Petitioners' §§ 101 and 112 arguments. Finally, a stay will spare the district court the burden of conducting claim construction of patent claims that may be canceled, amended, or subsequently commented on during the CBM review process.

Thus, all four statutory factors weigh heavily in favor of a stay, and Petitioners' rights to the relief requested are clear and indisputable. Rather than burdening the parties and the district court with dual-track and duplicative procedures, this Court should direct the district court to stay the litigation pending CBM review.

### C. Alternatively, this Court Can Deem That the Discovery Order Subsequently Entered by the Trial Court Is an Implied Denial of the Stay Motion, and Grant Leave to File an Interlocutory Appeal

It is well-established that the denial of a motion by the district court, although not formally expressed, may be implied by a subsequent order inconsistent with the granting of the relief sought. *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir.), *cert. denied*, 454 U.S. 1098 (1981) (district court denied party's motion by implication when it entered an order inconsistent with the relief sought); *see also Mikkelsen Graphic Eng'g, Inc. v. Zund Am., Inc.*, 541 Fed. Appx. 964, 970 n.2 (Fed. Cir. Aug. 16, 2013) (unpublished) (citing *Addington* for the proposition that "denial of a motion by the district court, although not formally expressed, may be implied by . . . an order inconsistent with the granting of the relief sought by the motion").  The aggressive discovery and scheduling order entered by Judge Gilstrap (*see supra* § IV.E.) is necessarily "inconsistent" with the relief requested in the previously-filed stay motions.  Thus, although a writ of mandamus ordering an immediate stay is warranted, the Court may view this affirmative action by the trial court—combined with the court's continued inaction following the PTO's institution of the CBMs—as a constructive denial of the motions to stay under AIA § 18(b) and grant leave to file an interlocutory appeal pursuant to statute.  *See Addington*, 650 F.2d at 666.

## VI.    CONCLUSION

For the reasons stated above, Petitioners respectfully request that this Court order the district court to stay this case pending the CBM proceedings or, at a minimum, grant Petitioners leave to file an interlocutory appeal.

Dated:       Washington, DC
             May 22, 2014

                                    Respectfully submitted,


                                    /s/ Kara F. Stoll
                                    Kara F. Stoll
                                    FINNEGAN, HENDERSON, FARABOW,
                                     GARRETT & DUNNER, LLP
                                    901 New York Avenue, NW
                                    Washington, DC 20001-4413
                                    (202) 408-4000

                                    Daniel C. Cooley
                                    FINNEGAN, HENDERSON, FARABOW,
                                     GARRETT & DUNNER, LLP
                                    11955 Freedom Drive
                                    Reston, VA 20190
                                    (202) 408-4000

                                    John G. Flaim
                                    Jay F. Utley
                                    W. Barton Rankin
                                    Mackenzie M. DeWerff
                                    BAKER & MCKENZIE LLP
                                    2300 Trammell Crow Center
                                    2001 Ross Avenue
                                    Dallas, Texas 75201
                                    (214) 978-3000

                                    *Attorneys for Fidelity National Information
                                    Services, Inc.*

/s/ David A. Roodman
David A. Roodman
BRYAN CAVE LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63012-2750
(314) 259-2000

Robert G. Lancaster
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100

*Attorneys for Fiserv, Inc.; AFNB Holdings, Inc.; Bank Of The West; Chisholm Bancshares, Inc.; First Community Bank, NA; First Texoma National Bank; FNB Financial Services, Inc.; Henderson Federal Savings Bank; Heritage Bank; Huntington Bancshares, Inc.; IBT Bancorp, Inc.; JLL Associates G.P. FCH, L.L.C.; The First National Bank of Livingston; American First National Bank; Carlile Bancshares, Inc.; Citizens 1st Bank; First Liberty National Bancshares, Inc.; Greater Southwest Bancshares, Inc.; Heritage Bancorp, Inc.; Hull State Bank; Huntington State Bank; Independent Bank of Texas; Joaquin Bankshares, Inc.; Lamar Bancorporation, Inc.; Lamar National Bank; Landmark Bank, NA; North Texas Bank, National Association; Northstar Bank of Texas; Peoples Bank; Texas Peoples National Bancshares, Inc.; Texas State Bank; The East Texas National Bank of Palestine; The First Liberty National Bank; The First National Bank of Kemp; The First*

 /s/ Jay F. Utley
John G. Flaim
Jay F. Utley
W. Barton Rankin
Mackenzie M. DeWerff
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
(214) 978-3000

*Attorneys for Accessbank Texas; Beal Bank, SSB.; Beal Financial Corporation; Citizens National Bank; The First National Bank Of Bells/Savoy (Now Cendera Bank, N.A.); Citizens State Bank; Colonial Holding Company; Colonial Savings, F.A.; Commerce National Financial Services, Inc.; Fayetteville Bank; First Bells Bankshares, Inc.; First Command Bank; First Command Financial Services, Inc.; First Community Bancshares, Inc.; First National Bank Texas D/B/A First Convenience Bank; Henderson Citizens Bancshares, Inc.; Industry Bancshares, Inc.; Industry State Bank; Lubbock National Bank; Pioneer Bank, S.S.B.; Premier Bancshares, Inc.; Sabine Bancshares, Inc.; Sabine State Bank and Trust Company; Southwest Bancorp, Inc.; The Stillwater National Bank and Trust Company (Now Bank SNB, National Association); Synergy Bank, S.S.B.; Texas First Bank; Texas Independent Bancshares, Inc.; Texas Security Bank; Texas Security Bankshares, Inc.; The First National Bank Of Bellville;*

*National Bank of Trenton; The Landrum*
*Company; Trenton Bankshares, Inc.;*
*Valliance Bank; Valliance Financial Corp.;*
*Viewpoint Bank, N.A.; ViewPoint Financial*
*Group, Inc.; Veritex Community Bank;*
*WCM Holdings, Inc.; and FNB Company*

*and The First National Bank Of Shiner*

/s/ Russell Jones, Jr.
Russell Jones, Jr.
Jay Heidrick
POLSINELLI
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000

*Attorneys for Jack Henry & Associates,*
*Inc., Symitar Systems, Profitstars, Inc.,*
*Steele Holdings, Inc., American State Bank,*
*Collin Bank, Justin State Bank, Sulphur*
*Springs Bancshares, Inc., The City National*
*Bank Of Sulphur Springs, East Texas*
*Bancshares, Inc., First National Bank Of*
*Jasper, First State Bank (Livingston),*
*Overton Financial Corp, First State Bank*
*(Overton), Lindale State Bank, Van Alstyne*
*Financial Corporation, Texas Star Bank,*
*Paris Bancshares, Inc., The Liberty*
*National Bank In Paris, Independent Bank*
*Group, Inc., Independent Bank, South*
*Plains Financial, Inc., City Bank, SB&T*
*Holdings, Inc., State Bank And Trust*
*Company, Third Coast Bancshares, Inc.,*
*Third Coast Bank, SSB, Nexbank Capital,*
*Inc., Nexbank, SSB, First Private Holdings,*
*Inc., First Private Bank Of Texas, Golden*
*Bank, N.A., Green Bancorp, Inc.,*
*Greenbank, N.A., Midsouth Bancorp,*
*Midsouth Bank, N.A., United Heritage*
*Credit Union, Citizens Bancorp, Inc.,*

/s/ Rick L. Rambo
Rick L. Rambo
Thomas R. Davis
Michael L. Raspino
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Attorneys for Directex Holding Corp,*
*Gladewater National Bank, East Texas*
*Financial Corporation, Citizens Bank, and*
*Computer Service Professionals, Inc.*

30

*Citizens National Bank, Emory Bancshares,*
*and First National Bank Of Emory*

/s/ Robert D. Nelon
Robert D. Nelon,
Phillip L. Free, Jr.,
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
(405) 553-2828

*Attorneys for Bankers Bancorp Of*
*Oklahoma, Inc. and The Bankers Bank*

/s/ Charles M. Hosch
Charles M. Hosch
STRASBURGER & PRICE - DALLAS
901 Main St, Suite 4300
Dallas, TX 75202
(214) 651-4678

*Attorneys for Advancial Federal Credit*
*Union*

/s/ Bryan G. Harrison
Bryan G. Harrison
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
(404) 233-7000

*Attorneys for DATCU Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2014, two true and correct copies of the foregoing PETITION FOR WRIT OF MANDAMUS were served by mail or email to the persons at the addresses listed:

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| **Andrew Joseph Wright**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd<br>Suite 1900<br>Irving, Tx 75039<br>972-831-1188<br>Fax: 972-444-0716<br>Email: andrewjwright@me.com<br><br>**Christian J Hurt**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd<br>Suite 1900<br>Irving, Tx 75039<br>972-831-1188<br>Fax: 972-444-0716<br>Email: christianhurt@nixlawfirm.com<br><br>**Derek Tod Gilliland**<br>Nix Patterson & Roach LLP -<br>Daingerfield<br>205 Linda Drive<br>Daingerfield, TX 75638<br>903/645-7333<br>Fax: 903/645-5389<br>Email: dgilliland@nixlawfirm.com<br><br>**Edward K Chin**<br>Nix Patterson & Roach - Irving<br>5215 N O'Connor Blvd | DataTreasury |

Suite 1900
Irving, Tx 75039
972-831-1188
Fax: 972-444-0716
Email: edchin@me.com

**Elton Joe Kendall**
Kendall Law Group, LLP
3232 McKinney
Ste 700
Dallas, TX 75204
214/744-3000
Fax: 12147443015
Email: jkendall@kendalllawgroup.com

**Eric M. Albritton**
ALBRITTON LAW FIRM
PO Box 2649
111 West Tyler, 75601
Longview, TX 75606
(903) 757-8449
Fax: (903) 758-7397
Email: ema@emafirm.com

**Karl Anthony Rupp**
Kendall Law Group, LLP
3232 McKinney
Ste 700
Dallas, TX 75204
214-744-3000
Fax: 214-744-3015
Email: krupp@kendalllawgroup.com

**Kirk Austin Voss**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd
Suite 1900
Irving, Tx 75039
972-831-1188
Fax: 972-444-0716

Email: kirkvoss@nixlawfirm.com

**Richard Benjamin King**
Nix Patterson & Roach LLP - Texarkana
2900 Saint Michael Drive
Suite 500
Texarkana, TX 75503
903/223-3999
Fax: 903/223-8520
Email: benking@nixlawfirm.com

**Robert Winn Cutler**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd
Suite 1900
Irving, Tx 75039
972.831.1188
Fax: 972.444.0716
Email: winncutler@nixlawfirm.com
*PRO HAC VICE*

**Ross Leonoudakis**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd
Suite 1900
Irving, Tx 75039
972-831-1188
Fax: 972-444-0716
Email: rossl@nixlawfirm.com

**Thomas John Ward , Jr**
Ward & Smith Law Firm
PO Box 1231
1127 Judson Road
Suite 220
Longview, TX 75606
903/757-6400
Fax: 903/757-2323
Email: jw@wsfirm.com

**Nelson James Roach**
Nix Patterson & Roach LLP -
Daingerfield
205 Linda Drive
Daingerfield, TX 75638
903/645-7333
Fax: 19036455389
Email: njroach@nixlawfirm.com

**David A Roodman**
Bryan Cave LLP - St Louis
211 N Broadway
Suite 3600
St Louis, MO 63102-3600
314/259-2000
Fax: 314/259-2020
Email: daroodman@bryancave.com

**Nick E Williamson**
Bryan Cave LLP - St Louis
211 N Broadway
Suite 3600
St Louis, MO 63102-3600
314/259-2000
Fax: 314/259-2020
Email: nick.williamson@bryancave.com

**Ameer Gado**
Bryan Cave LLP - St Louis
211 N Broadway Ste 3600
St Louis, MO 63102
314/259-2745
Fax: 314/259-2020
Email: aagado@bryancave.com

**Emma C Harty**
Bryan Cave LLP - St Louis
211 N Broadway Ste 3600
St Louis, MO 63105
314/259-2000

Fiserv, Inc.;

AFNB Holdings, Inc.;

Bank Of The West;

Chisholm Bancshares, Inc.;

First Community Bank, NA;

First Texoma National Bank;

FNB Financial Services, Inc.;

Henderson Federal Savings Bank;

Heritage Bank;

Huntington Bancshares, Inc.;

IBT Bancorp, Inc.;

JLL Associates G.P. FCH, L.L.C.;

The First National Bank of Livingston;

American First National Bank;

Carlile Bancshares, Inc.;

Citizens 1st Bank;

First Liberty National Bancshares, Inc.;

Greater Southwest Bancshares, Inc.;

Heritage Bancorp, Inc.;

Hull State Bank;

Huntington State Bank;

Independent Bank of Texas;

| | |
|---|---|
| Fax: 314/259-2020<br>Email: emma.harty@bryancave.com<br><br>**Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP-Marshall<br>P O Box 1556<br>Marshall, TX 75671-1556<br>903-938-8900<br>Fax: 19727674620<br>Email: michaelsmith@siebman.com<br><br>**Robert G Lancaster**<br>Bryan Cave LLP - Santa Monica<br>120 Broadway<br>Suite 300<br>Santa Monica, CA 90401<br>310/576-2100<br>Fax: 310/576-2200<br>Email: rglancaster@bryancave.com<br><br>**D Woodard Glenn**<br>Attorney at Law<br>2626 Cole Avenue<br>Suite 510<br>Dallas, TX 75204<br>214/871-9333<br>Fax: 12148717131<br>Email: wglenn@dwgpc.com | Joaquin Bankshares, Inc.;<br>Lamar Bancorporation, Inc.;<br>Lamar National Bank;<br>Landmark Bank, NA;<br>North Texas Bank,<br>National Association;<br>Northstar Bank of Texas;<br>Peoples Bank;<br>Texas Peoples National Bancshares, Inc.;<br>Texas State Bank;<br>The East Texas National Bank of Palestine;<br>The First Liberty National Bank;<br>The First National Bank of Kemp;<br>The First National Bank of Trenton;<br>The Landrum Company;<br>Trenton Bankshares, Inc.;<br>Valliance Bank;<br>Valliance Financial Corp.;<br>Viewpoint Bank, N.A.;<br>ViewPoint Financial Group, Inc.;<br>Veritex Community Bank;<br>WCM Holdings, Inc.; and<br>FNB Company |
| **Jay Forrest Utley**<br>Baker & McKenzie<br>2001 Ross Ave<br>Suite 2300<br>Dallas, TX 75201<br>214/978-3036<br>Fax: 12149783099 | Fidelity National Information Services, Inc.;<br>Accessbank Texas;<br>Beal Bank, SSB.;<br>Beal Financial Corporation; |

Email: jay.utley@bakermckenzie.com

**John G Flaim**
Baker & McKenzie - Dallas
2001 Ross Ave
Suite 2300
Dallas, TX 75201
214/978-3097
Fax: 12149783099
Email: john.flaim@bakermckenzie.com

**Mackenzie Marie DeWerff**
Baker & McKenzie - Dallas
2001 Ross Ave
Suite 2300
Dallas, TX 75201
214-978-3048
Fax: 214-965-5946
Email:
mackenzie.dewerff@bakermckenzie.com

**Weldon Barton Rankin**
Baker & McKenzie - Dallas
2001 Ross Ave
Suite 2300
Dallas, TX 75201
214/978-3000
Fax: 214/9783088
Email: bart.rankin@bakermckenzie.com

**J. Pat Heptig**
Heptig Law Group, Ltd
1700 Pacific Avenue
Suite 2650
Dallas, TX 75201
214-451-2154
Fax: 214-306-5424
Email: pheptig@heptiglaw.com

**Bryan Haynes**

Citizens National Bank;

The First National Bank Of Bells/Savoy (Now Cendera Bank, N.A.);

Citizens State Bank;

Colonial Holding Company;

Colonial Savings, F.A.;

Commerce National Financial Services, Inc.;

Fayetteville Bank;

First Bells Bankshares, Inc.;

First Command Bank;

First Command Financial Services, Inc.;

First Community Bancshares, Inc.;

First National Bank Texas D/B/A First Convenience Bank;

Henderson Citizens Bancshares, Inc.;

Industry Bancshares, Inc.;

Industry State Bank;

Lubbock National Bank;

Pioneer Bank, S.S.B.;

Premier Bancshares, Inc.;

Sabine Bancshares, Inc.;

Sabine State Bank and Trust Company;

Southwest Bancorp, Inc.;

The Stillwater National Bank and Trust Company (Now Bank SNB, National Association);

Synergy Bank, S.S.B.;

Texas First Bank;

Texas Independent Bancshares, Inc.;

| | |
|---|---|
| Scheef & Stone, L.L.P.<br>500 N. Akard<br>Suite 2700<br>Dallas, TX 75201<br>214-706-4234<br>Fax: 214-706-4242<br>Email: bryan.haynes@solidcounsel.com<br><br>**James Mark Mann**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>903/657-8540<br>Fax: 9036576003<br>Email: mark@themannfirm.com<br><br>**Stacie H Tandy**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>903-657-8540<br>Fax: 903-657-6003<br>Email: stacie@themannfirm.com | Texas Security Bank;<br><br>Texas Security Bankshares, Inc.;<br><br>The First National Bank Of Bellville; and<br><br>The First National Bank Of Shiner |
| **Douglas Ray McSwane, Jr**<br>Potter Minton, a Professional Corporation<br>110 N College Avenue<br>Suite 500<br>Tyler, TX 75702<br>903/597-8311<br>Fax: 9035930846<br>Email: dougmcswane@potterminton.com<br><br>**Jason Dwain Mazingo**<br>Potter Minton, a Professional Corporation<br>110 N College Avenue<br>Suite 500 | Jack Henry & Associates, Inc.,<br><br>Symitar Systems,<br><br>Profitstars, Inc.,<br><br>Steele Holdings, Inc.,<br><br>American State Bank,<br><br>Collin Bank,<br><br>Justin State Bank,<br><br>Sulphur Springs Bancshares, Inc.,<br><br>The City National Bank of Sulphur Springs,<br><br>East Texas Bancshares, Inc.,<br><br>First National Bank of Jasper, |

Tyler, TX 75702
903/525-2266
Fax: 9035930846
Email: jasonmazingo@potterminton.com

**Jay E Heidrick**
Polsinelli Shughart PC
6201 College Blvd
Ste 500
Overland Park, KS 66211
913-451-8788
Fax: 913-451-6205
Email: jheidrick@polsinelli.com

**Melissa S Ho**
Polsinelli - Phoenix
One East Washington Street
Suite 1200
Phoenix, AZ 85004
602.650.2028
Fax: 602.264.7033
Email: mho@polsinelli.com

**Russell Scarritt Jones, Jr**
Polsinelli Shughart PC
120 W 12th Street
Suite 1600
Kansas City, MO 64105
816/421-3355
Fax: 816/374-0509
Email: rjones@polsinelli.com

First State Bank (Livingston),

Overton Financial Corp,

First State Bank (Overton),

Lindale State Bank,

Van Alstyne Financial Corporation,

Texas Star Bank,

Paris Bancshares, Inc.,

The Liberty National Bank In Paris,

Independent Bank Group, Inc.,

Independent Bank,

South Plains Financial, Inc.,

City Bank,

SB&T Holdings, Inc.,

State Bank and Trust Company,

Third Coast Bancshares, Inc.,

Third Coast Bank, SSB,

Nexbank Capital, Inc.,

Nexbank, SSB,

First Private Holdings, Inc.,

First Private Bank of Texas,

Golden Bank, N.A.,

Green Bancorp, Inc.,

Greenbank, N.A.,

Midsouth Bancorp,

Midsouth Bank, N.A.,

United Heritage Credit Union,

Citizens Bancorp, Inc.,

Citizens National Bank,

Emory Bancshares, and

| | First National Bank of Emory |
|---|---|
| **Rick L. Rambo**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>713-890-5175<br>Fax: 713-890-5001<br>Email: rrambo@morganlewis.com<br><br>**Thomas R Davis**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>713-890-5000<br>Fax: 713-890-5001<br>Email: tdavis@morganlewis.com | Directex Holding Corp,<br><br>Gladewater National Bank,<br><br>East Texas Financial Corporation,<br><br>Citizens Bank, and<br><br>Computer Service Professionals, Inc. |
| **Robert D Nelon**<br>Hall Estill Hardwick Gable Golden & Nelson PC - Oklahoma<br>100 North Broadway<br>Chase Tower<br>Ste 2900<br>Oklahoma City, OK 73102-8865<br>405/553-2805<br>Fax: 405/553-2855<br>Email: bnelon@hallestill.com<br><br>**Melissa Richards Smith**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>903/934-8450<br>Fax: 903/934-9257<br>Email: melissa@gillamsmithlaw.com | Bankers Bancorp Of Oklahoma, Inc. and<br><br>The Bankers Bank |

| | |
|---|---|
| **Harry Lee Gillam , Jr**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>903-934-8450<br>Fax: 903-934-9257<br>Email: gil@gillamsmithlaw.com | |
| **Charles M Hosch**<br>Strasburger & Price - Dallas<br>901 Main St<br>Suite 4300<br>Dallas, TX 75202<br>214/651-4678<br>Fax: 12146514330<br>Email: charles.hosch@strasburger.com | Advancial Federal Credit Union |
| **Bryan Guy Harrison**<br>Morris, Manning & Martin, LLP<br>1600 Atlanta Financial Center<br>3343 Peachtree Road, NE<br>Suite 1600<br>Atlanta, Ga 30326<br>404-233-7000<br>Fax: 404-365-9532<br>Email: bgh@mmmlaw.com<br><br>**Randy L Roberts**<br>Blalack & Williams, PC<br>5550 LBJ Freeway<br>Suite 400<br>Dallas, TX 75240<br>214/630-1916<br>Fax: 12146301112<br>Email: rroberts@blalack.com | DATCU Credit Union |
| **Christopher Benton Henry**<br>Minor & Jester<br>515 S. Carroll Blvd | Pilot Point Bancorp, Inc.<br><br>PointBank |

Ste A
Denton, TX 76202
940-387-7585
Fax: 940-808-0054
Email: mjcourt@thelocalcurcuit.com

Two copies were also served on the district court judge:

HON. RODNEY GILSTRAP, JUDGE
U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
Sam B. Hall, Jr. Federal Building
and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
PHONE: (903) 935-3868
FAX: (903) 935-2295

/s/ Daniel C. Cooley
Daniel C. Cooley
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:  (202) 408-4000