Miscellaneous Docket No. 14-138

_____

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

_____

IN RE FIDELITY NATIONAL INFORMATION SERVICES, INC., FISERV, INC.,
JACK HENRY & ASSOCIATES, INC., ET AL.,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas, Marshall Division, in Civil Action Nos. 2:13-cv-00431,
2:13-cv-00432, and 2:13-cv-00433

_____

**REPLY TO DATATREASURY'S RESPONSE TO**

**PETITION FOR WRIT OF MANDAMUS**

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................... ii

I.    INTRODUCTION ...........................................................................1

II.   ARGUMENT...................................................................................1

    A.    Mandamus Is Appropriate Under the Unique Circumstances
        of This Case..........................................................................1

        1.    Without a District Court Ruling, an Interlocutory
              Appeal Is Not Available.............................................1

        2.    The Stay Motions Have Been "Ripe" for Months .....................3

        3.    By Waiting, Petitioners Suffer Substantial Prejudice................4

    B.    Petitioners Have a Clear and Indisputable Right to a Stay .................6

        1.    Section 18(b) Strongly Encourages Stays...................................6

        2.    A Stay Will Simplify the Issues in the Case..............................7

        3.    The Stage of the Case Justifies a Stay .......................................9

        4.    The Requested Stay Is Short and Will Not Unduly
              Prejudice DataTreasury..........................................10

        5.    A Stay Will Reduce the Burden of Litigating Patents
              that Are "More Likely Than Not" Unpatentable .....................14

    C.    Leave to File an Interlocutory Appeal ...............................................15

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications Inc.*,
  694 F.3d 1312 (Fed. Cir. 2012) .........................................................12

*Apple, Inc. v. Samsung Electronics Co.*,
  678 F.3d 1314 (Fed. Cir. 2012) .........................................................12

*Bellehumeur v. Bonnett*,
  127 F. App'x 480 (Fed. Cir. 2005) .......................................................8

*Cheney v. U.S. District Court for the District of Columbia*,
  542 U.S. 367 (2004)..............................................................................5

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72, Dkt. No. 1727 (E.D. Tex. Dec. 7, 2009) ....................7

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72 (E.D. Tex. Mar. 17, 2010)....................................11, 12

*Federal Trade Commission v. Standard Oil Co.*,
  449 U.S. 232 (1980)..............................................................................5

*Fractus, S.A. v. Samsung Electronics Co.*,
  876 F. Supp. 2d 802 (E.D. Tex. 2012), *appeal dismissed*
  (Aug. 30, 2012) ...................................................................................12

*i4i Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ...........................................................12

*In re Ameranth Patent Litigation Cases*,
  No. 3:11-cv-1810, 2013 WL 7144380 (S.D. Cal. Nov. 26, 2013) ........3

*In re City of Houston*,
  731 F.3d 1326 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 1325
  (2014)....................................................................................................13

*In re Rémy Cointreau USA, Inc.*,
  541 F. App'x 985 (Fed. Cir. 2013) ........................................................2

*Intertainer, Inc. v. Hulu, LLC*,
    No. 2:13-cv-05499, 2014 WL 466034 (C.D. Cal. Jan. 24, 2014) .......................3

*Landmark Technology, LLC v. iRobot Corp.*,
    No. 6:13-cv-00411, 2014 WL 486836 (E.D. Tex. Jan. 24, 2014)....................13

*McRo, Inc. v. Bethesda Softworks LLC*,
    No. 1-12-cv-01509, Dkt. No. 45 (D. Del. May 1, 2014) ....................................3

*MySpace, Inc. v. GraphOn Corp.*,
    672 F.3d 1250 (Fed. Cir. 2012) ............................................................................9

*Segin Systems, Inc. v. Stewart Title Guaranty Co.*,
    No. 2:13-cv-00190, Dkt. No. 73 (E.D. Va. Mar. 31, 2014) .................................3

*TMC Fuel Injection Systems, LLC v. Ford Motor Co.*,
    No. 12-4971, Dkt. No. 71 (E.D. Pa. May 15, 2014)............................................4

*VirtualAgility v. Salesforce.com*,
    No. 14-1232, Dkt. No. 34 (Fed. Cir. Feb. 12, 2014) ..........................................4

**Federal Statutes**

35 U.S.C. § 101 .....................................................................................................7, 9

35 U.S.C. § 112 .....................................................................................................7, 9

35 U.S.C. § 315(b) ...................................................................................................13

America Invents Act § 18 ...................................................................................passim

**Federal Rules**

Fed. R. App. P. 4(a)(7)(A)-(B) ...............................................................................15

Fed. R. Civ. P. 54(a).................................................................................................15

Fed. R. Civ. P. 58(a).................................................................................................15

Fed. R. Civ. P. 58(c).................................................................................................15

**Other Authorities**

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of
    Sen. Schumer) ....................................................................................6

157 Cong. Rec. S1360-02 (daily ed. Mar. 8, 2011) (statement of
    Sen. Leahy) .........................................................................................6

## I.    INTRODUCTION

This case presents an extraordinary situation that warrants a writ of mandamus.  DataTreasury sued over 100 local and community banks, credit unions, and holding companies for alleged infringement of the very patents that inspired Congress to create the CBM procedure.  Not surprisingly, when given the chance to consider these patents, the PTAB concluded that all the claims—which DataTreasury concedes are largely duplicative—are "more likely than not" invalid.  Over a period of five months, Petitioners filed nine motions and other papers in the district court seeking a stay to allow the PTAB to finish its review and either invalidate the patents (resolving the entire lawsuit) or reduce the issues based on the applicable estoppel provisions.  Notwithstanding all of this, the district court has yet to set a hearing date to discuss Petitioners' papers.  Instead, the district court has placed the litigation in high gear, entering a tight schedule, aggressive discovery deadlines, and a trial date that is less than one year away.  Petitioners now seek relief from this Court as a last resort.

## II.    ARGUMENT

### A.    Mandamus Is Appropriate Under the Unique Circumstances of This Case

#### 1.    Without a District Court Ruling, an Interlocutory Appeal Is Not Available

DataTreasury asserts that there is "an alternate means to seek relief in this Court—an immediate interlocutory appeal."  Resp. 1.  But DataTreasury does not

1

dispute that this alternative is only available after the district court rules on a party's motion to stay.  Here, by not ruling on Petitioners' motions and instead entering an aggressive schedule, the district court has effectively denied Petitioners' motions and their rights to an immediate interlocutory appeal. Petitioners are left with no means for relief other than mandamus.

Appellate courts have granted mandamus in similar circumstances, ordering district courts to rule on outstanding motions instead of taking no action.  Pet. 15-16.  Under the unique circumstances in this case—where the district court has not ruled on Petitioners' motions even though the parties (i) filed their CBM petitions early in the litigation, (ii) promptly moved for a stay, (iii) moved for an emergency stay, and (iv) notified the district court when the PTAB found all claims of the asserted patents "more likely than not" unpatentable—this Court should grant the petition for writ of mandamus to ensure that AIA § 18 is not thwarted.

DataTreasury next argues that there is no reason to depart from this Court's practice of "allow[ing] the trial court to act on the motion in the first instance." Resp. 5 (quoting *In re Rémy Cointreau USA, Inc.*, 541 F. App'x 985, 987 (Fed. Cir. 2013)).  But *Rémy* involved a transfer motion filed in a district court case *that had been stayed*.  This Court held that, in view of the stay, the district court properly declined to act on the transfer motion.  *Rémy*, 541 F. App'x at 987.  This Court declined to address the transfer motion in the first instance because transfer

decisions are reviewed "under a highly deferential standard of review." *Id*. Here, in contrast, the district court effectively denied Petitioners' stay motions by not ruling on them and entering a tight schedule. And this Court owes no deference to the district court. *See* AIA § 18(b) (de novo standard of review). It is entirely proper for this Court to act on the stay motions on appeal or, at a minimum, direct the district court to decide the long-pending stay motions. *Id.*

## 2.    The Stay Motions Have Been "Ripe" for Months

DataTreasury next mistakenly argues that mandamus is unwarranted because the stay motions allegedly only became "ripe for adjudication" on April 29, 2014, "when the PTAB issued its first decisions." Resp. 6-7. But DataTreasury cites no authority, and Petitioners are not aware of any, that requires a court to wait until institution to rule on a fully-briefed motion to stay. Indeed, applicable authority, including the very cases DataTreasury cites, directly contradicts this "ripeness" argument as numerous courts have granted or denied stays prior to institution. *See, e.g.*, *Intertainer, Inc. v. Hulu, LLC*, No. 2:13-cv-05499, 2014 WL 466034, at *2 (C.D. Cal. Jan. 24, 2014) (ruling on stay prior to institution); *In re Ameranth Patent Litig. Cases*, No. 3:11-cv-1810, 2013 WL 7144380 (S.D. Cal. Nov. 26, 2013) (same); *Segin Sys., Inc. v. Stewart Title Guar. Co.*, No. 2:13-cv-00190, Dkt. No. 73, at 6 (E.D. Va. Mar. 31, 2014) (same); and *McRo, Inc. v. Bethesda Softworks LLC*, No. 1-12-cv-01509, Dkt. No. 45 (D. Del. May 1, 2014) (same).

DataTreasury also cites *TMC Fuel Injection Sys., LLC v. Ford Motor Co.*, No. 12-4971, Dkt. No. 71 (E.D. Pa. May 15, 2014), but that court also ruled on the pending motion prior to institution. Moreover, five and a half weeks have elapsed since the PTAB's institution and the district court has still taken no action. There is no justification for the lack of action on the stay motions, before or after institution, which inaction equates to an outright denial.

DataTreasury next speculates that the district court has a "prudent reason" for not ruling on Petitioners' stay motions: it is waiting for this Court's decision in *VirtualAgility*. Resp. 8. But DataTreasury fails to explain why this same prudence prevents the district court from granting Petitioners' emergency motion for a temporary stay. Even *VirtualAgility* has been temporarily stayed by this Court. *VirtualAgility v. Salesforce.com*, No. 14-1232, Dkt. No. 34 (Fed. Cir. Feb. 12, 2014). And, unlike here, *VirtualAgility* involves direct competitors. DataTreasury's guesswork as to why the district court has failed to act cannot defeat Petitioners' clear and indisputable right to immediate review and relief.

### 3.    By Waiting, Petitioners Suffer Substantial Prejudice

Finally, DataTreasury asserts that Petitioners can simply wait for the district court to eventually rule because the only prejudice is "having to expend the costs to defend this lawsuit." Resp. 9. But this argument flies in the face of the purpose

of a stay under AIA § 18(b)(2): to avoid burdensome dual-track litigation, inconsistent results, and wasted judicial resources.

To support its argument, DataTreasury cites *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980), for the proposition that "litigation expenses do not constitute irreparable injury." Resp. 9-10. But "irreparable injury" is not a requirement to obtain mandamus relief. Nor does *Standard Oil* involve mandamus. The standard for mandamus is provided by *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367, 380-81 (2004), and "irreparable injury" is noticeably absent. In any event, the time expended by Petitioners' key employees, cost of litigating claims that have been held to be "more likely than not unpatentable," and the burden of dual-track proceedings create substantial prejudice to Petitioners far removed from "mere litigation expense."

Furthermore, DataTreasury has stated that it may seek to overcome the PTAB's finding that the Ballard Patents' claims are "more likely than not unpatentable" by amending them. *See* Exs. Y, Z. Of course, any amendments will materially alter the district court litigation, including the asserted claims, infringement allegations, discovery, claim construction, invalidity contentions, noninfringement defenses, and potentially inequitable conduct.

5

### B.     Petitioners Have a Clear and Indisputable Right to a Stay

Petitioners have a "clear and indisputable" right to a writ of mandamus on the basis of each of the stay factors in AIA § 18.   Nothing in DataTreasury's response undermines Petitioners' right to a writ of mandamus.

### 1.     Section 18(b) Strongly Encourages Stays

The text of § 18(b) confirms that the statute strongly favors a stay.   Section 18(b) includes a fourth factor that asks whether a stay "will reduce the burden of litigation on the parties and on the court."    AIA § 18(b)(1)(D).    As the Congressional Record explains, this fourth factor "places a very heavy thumb on the scale in favor of [a] stay."   157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011).

DataTreasury argues that the legislative history cannot be considered because AIA § 18 "lacks any ambiguity that justifies looking to floor statements." Resp. 11-12.   But DataTreasury itself cites the Congressional Record where it thinks doing so would be helpful.   *Id.* at 11 (citing 157 Cong. Rec. S1360-02 (daily ed. Mar. 8, 2011).    Moreover, DataTreasury injects ambiguity into the interpretation of AIA § 18 by arguing that the "burden of litigation factor" is not met if the "'simplification of the issues' factor" is not met—thus creating a redundancy.   *Id.*   DataTreasury cannot escape the required fourth factor, and DataTreasury's own argument justifies consideration of the legislative history.

## 2.   A Stay Will Simplify the Issues in the Case

Turning to the first stay factor, a stay will undoubtedly simplify the issues. The PTAB did not institute review on just some of DataTreasury's claims—it instituted on *all* of them, concluding that every claim was "more likely than not" unpatentable on one or both of 35 U.S.C. § 101 and 35 U.S.C. § 112. *See* Pet. Ex. I at 2; Pet. Ex. J at 2. DataTreasury suggests that some claims will survive the CBMs (*see* Resp. 13), but given the circumstances and DataTreasury's admission that the claims are similar, the odds are not in DataTreasury's favor.

DataTreasury argues that the Ballard Patents were "judicially vetted under §§ 101 and 112" in the "*Wells Fargo* litigation." *Id.* at 14. But close scrutiny reveals that this alleged "vetting" involved nothing more than the district court's one-line denial—before *Myriad*, *Prometheus*, and *CLS Bank*—of a short letter by counsel *requesting leave* to file a motion for summary judgment based on 35 U.S.C. § 101. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, Dkt. No. 1727, at 2 (E.D. Tex. Dec. 7, 2009). In contrast, the PTAB here considered dozens of pages of briefing and issued more than twenty pages of analysis addressing the Ballard Patents, claim construction, and § 101. *See* Pet. Ex. I; Pet. Ex. J. And DataTreasury's summary assertion that the defendants in *Wells Fargo* "failed to prevail on their § 112 defenses" (Resp. 14) does not explain how those defenses correspond to the specific § 112 issues in Petitioners' CBM reviews.

7

Even assuming, *arguendo*, one or more of the asserted claims survive PTAB review, the first stay factor still weighs in Petitioners' favor since all remaining defendants agreed to any litigation estoppel resulting from the FIS CBM proceedings.    DataTreasury accuses Petitioners of "carefully craft[ing] their estoppel stipulation" because Petitioners stated that defendants would be estopped under "AIA § 18(a)(1)(D) to the extent those provisions apply to FIS." *Id*. at 16. But Petitioners referred to FIS simply because it was the petitioner in the CBM. To be clear, all of the defendants agree to be bound by AIA § 18(a)(1)(D) prohibiting them from raising invalidity in the district court on any ground that the petitioner (FIS) raised during the CBM proceedings.

DataTreasury next argues that this Court should ignore the defendants' stipulations because, "[b]efore the district court, the Petitioners were unable to obtain a stipulation from *all* of the defendants to be bound by the CBM petitions." *Id*. (emphasis added).    DataTreasury asks the Court to ignore that nearly all defendants previously agreed to the estoppel, and *all defendants now agree to the estoppel*, because two or three defendants had not yet fully considered the issue earlier.    But this Court routinely relies on additional representations provided on appeal. *See Bellehumeur v. Bonnett*, 127 F. App'x 480, 484 (Fed. Cir. 2005) (court relies on several factual concessions made at oral argument).

8

Finally, DataTreasury argues that an estoppel on the § 101 and § 112 issues raised during the CBM proceedings does not simplify the proceedings *enough* because "eliminating those issues from the case will not produce substantial cost savings," and such issues are "rarely a focus at trial." Resp. 17.  DataTreasury's arguments are particularly striking because they come right after its citation to *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250 (Fed. Cir. 2012)—a case involving § 101, which states, "[o]ur opinions spend page after page revisiting our cases and those of the Supreme Court, and still we continue to disagree vigorously over what is or is not patentable subject matter," *id*. at 1259.  In other words, § 101 and § 112 present difficult issues which, when resolved by the PTAB, will "simplify the issues in question and streamline the trial."  AIA § 18(b)(1)(A).  Further, if DataTreasury amends claims as it suggests, a stay will unquestionably simplify the litigation; there is no benefit to litigating claims that may change.

### 3.    The Stage of the Case Justifies a Stay

When addressing the second stay factor—whether discovery is complete and a trial date has been set—DataTreasury quickly concedes that "[i]t is true that the Petitioners filed their first motion to stay relatively early in the case" and "the parties are early in the discovery process."  Resp. 18-19.  Reaching for an argument, DataTreasury compares the CBM and district court proceedings, asserting that they are both in their early stages.  But this comparison is irrelevant.

Section 18(b)(1) only considers the stage of the district court proceedings. And even if a comparison were relevant, the CBMs are set to conclude around the same time as trial, and the PTAB recently granted FIS's request to file a motion to expedite the CBMs (Ex. W at 22-23), so the CBMs may conclude even earlier.

### 4.  The Requested Stay Is Short and Will Not Unduly Prejudice DataTreasury

A stay will not unduly prejudice DataTreasury. DataTreasury does not dispute that the time necessary for an administrative review does not, by itself, constitute undue prejudice to the nonmovant or present a tactical advantage to the movant. *See* Pet. 21-22. Instead, DataTreasury speculates about the harm of a lengthy appeal—an irrelevant point. Petitioners have *not* requested a stay pending the CBM proceedings, petitions for rehearing, and any appeals. *See* Ex. K at 13; Ex. L at 12; Ex. M at 9. The request before the Court is that the underlying litigations be stayed through the entry of the Final Written Decisions in CBM2014-00020 and CBM2014-00021. The requested stay will likely be less than a year, particularly since FIS has moved to expedite the CBM proceedings. *See* Ex. X.[1]

_____

[1] DataTreasury opposed the request to expedite because it was too busy.

> MR. HERSHKOVITZ: . . . it would make it virtually impossible for us to have the proceedings further expedited, in light of the fact that we do have other proceedings that we're handling for this particular patent owner.
>
> . . .

(continued…)

DataTreasury next argues that delay will harm DataTreasury's chances of obtaining an injunction.  Resp. 21-22.  But DataTreasury has not even sought a preliminary injunction.   And DataTreasury did not seek an injunction at the conclusion of the Phase 1 trial in the *Wells Fargo* case, its only case to go through trial, so its claim that it would do so here rings hollow.  *See DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 (E.D. Tex. Mar. 17, 2010).  Indeed, outside of a couple of stipulated injunctions in connection with settlement agreements, Petitioners are not aware of any instance when DataTreasury has obtained a preliminary or permanent injunction of any alleged infringement.

And even if DataTreasury were to prevail in any of its trials against Petitioners, it will not obtain an injunction.  DataTreasury is a nonpracticing entity that does not compete with any of the Petitioners and has engaged in extensive licensing activity, all facts relied upon by this and other courts in denying injunctive relief.   For example, in *ActiveVideo Networks, Inc. v. Verizon*

---

(…continued)

> JUDGE TIERNEY: . . . I'm sorry, but what you're telling us and what I'm gathering is your client is able to go out and have 120 different defendants brought to District Court and handle all of that at the same time, but at the same time, when it comes to this office, you're telling us we can't handle nine cases, because we selected only one law firm. I'm trying to reconcile [these two] seemingly inconsistent positions.

Ex. W 15:18-19:21.

*Communications Inc*., 694 F.3d 1312 (Fed. Cir. 2012), this Court reversed an entry of injunction because the patentee had extensively licensed its technology and the parties were not competitors. *See also Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 853 (E.D. Tex. 2012), *appeal dismissed* (Aug. 30, 2012) (finding no irreparable harm when party "[did] not appear to be a direct competitor," "transitioned out of" the relevant industry, and had "moved toward licensing").

DataTreasury also alleges that the fact that it "previously practiced the Ballard patents" entitles it to an injunction. Resp. 21. At best, DataTreasury has not sold a commercial product since at least 2001. Transcript of Jury Trial at 105-06, *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 (E.D. Tex. Mar. 17, 2010), ECF No. 2101. DataTreasury's reliance on *i4i Ltd. Partnership v. Microsoft Corp*., 598 F.3d 831, 862 (Fed. Cir. 2010), is also misplaced. DataTreasury has not—and cannot—show that Petitioners did anything that "rendered [DataTreasury's] product obsolete," "caused [it] to lose market share," or "change its business strategy to survive." *Id.* "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).

And despite DataTreasury's arguments to the contrary, the short stay requested by Petitioners will not result in a loss of any material evidence. Defendants (and presumably DataTreasury) have instituted appropriate legal holds

to preserve potentially relevant documents and information. Moreover, the potential loss of some evidence is not sufficient to create undue prejudice. *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-00411, 2014 WL 486836, at *4 (E.D. Tex. Jan. 24, 2014) (no undue prejudice notwithstanding party's argument that "witnesses may become unavailable, memories may fade and evidence may be lost pending the conclusion of the CBM Review proceedings").

This Court should also reject DataTreasury's argument that Petitioners filed "serial" petitions in an attempt to gain tactical advantage by delaying the proceedings. Resp. 25-26. The mandamus petition is based on the first-filed CBM reviews and no other PTAB proceedings. Pet. 2. To the extent any Petitioners later seek a stay based on other petitions, the merits of those requests can be addressed at that time. DataTreasury's attempts to pull in hypothetical issues not before this Court should be rejected. *In re City of Houston*, 731 F.3d 1326, 1335 (Fed. Cir. 2013) (court may only "decide the case that is before [it]."). And given the prohibitions of 35 U.S.C. § 315(b), the relevant estoppel provisions, and the statutory requirements for completing CBMs and IPRs quickly, DataTreasury's concerns that Petitioners can "drag out the proceedings for as long as they choose" (Resp. 26) are greatly exaggerated.

**5.    A Stay Will Reduce the Burden of Litigating Patents
that Are "More Likely Than Not" Unpatentable**

A stay will undeniably reduce the burdens in this litigation.  DataTreasury
does not deny that it negotiated for and obtained 2,600 hours of deposition time
and that it has issued 76 deposition notices thus far.   In fact, DataTreasury
concedes that the parties have already been "engaging in about three to five
depositions per week."  *Id.* at 24-25.  DataTreasury also does not deny its history
of requiring defendants to produce tens of millions of pages of documents.

Rather, DataTreasury argues that Petitioners' numbers are overstated.  But
Petitioners estimated 2-3 depositions a day based on the *already noticed*
depositions and comments by the district court and DataTreasury's counsel during
the motion hearing on February 12, 2014, that it would need to double or triple
track the depositions.  DataTreasury's reshuffling of deposition dates will only
create more burden later on.  And this estimate does not even include the additional
depositions that Petitioners will need to notice (beyond the 22 that Petitioners have
already noticed) to defend against DataTreasury's claims.

Regarding document discovery, DataTreasury argues that each of the local
and community banks does not "possess as much discoverable information as Bank
of America, Wells Fargo, and J.P. Morgan Chase."  *Id*. at 28-29.  DataTreasury
ignores the large vendors that are named defendants, speculates as to the volume of
discoverable information, and misses the point.   Multiple lawsuits naming

14

numerous large and small defendants can be more burdensome than a single case with a small number of large defendants. And whether the number of documents produced by Petitioners is 20, 50, or 100 million, the discovery required constitutes a needless and wasteful burden that will be avoided by a stay.

### C.    Leave to File an Interlocutory Appeal

Although mandamus is warranted, this Court may instead grant leave to file an interlocutory appeal. After arguing that Petitioners have not waited long enough to request relief from this Court, DataTreasury flip-flops on this issue, arguing that Petitioners have waited too long. DataTreasury does not suggest that a constructive denial did not occur. Rather, it argues that an appeal from the Docket Control and Amended Discovery Orders—which issued in February and March 2014—is untimely. But Petitioners do not appeal the Discovery and Docket Control Orders. Rather, they seek leave to appeal the constructive denial of their *motions to stay*. *See* Pet. 26. Since no separate document issued to signal entry of the stay decision, the appeal deadlines have not yet passed. *See* Fed. R. App. P. 4(a)(7)(A)-(B) (entry of judgment *150 days* later); Fed. R. Civ. P. 54(a), 58(a),(c). Nor does Petitioner's request open any "floodgates," as DataTreasury asserts. Denials of CBM stays are already immediately appealable under the AIA. Only in the unusual circumstances where trial courts have acted inconsistently with the stay relief requested does a constructive denial arise, as here. *See* Pet. 26.

15

Dated:      Washington, DC
            June 6, 2014

                                        Respectfully submitted,


                                        /s/ Kara F. Stoll
                                        Kara F. Stoll
                                        FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, LLP
                                        901 New York Avenue, NW
                                        Washington, DC 20001-4413
                                        (202) 408-4000

                                        Daniel C. Cooley
                                        FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, LLP
                                        11955 Freedom Drive
                                        Reston, VA 20190
                                        (202) 408-4000

                                        John G. Flaim
                                        Jay F. Utley
                                        W. Barton Rankin
                                        Mackenzie M. DeWerff
                                        BAKER & MCKENZIE LLP
                                        2300 Trammell Crow Center
                                        2001 Ross Avenue
                                        Dallas, TX 75201
                                        (214) 978-3000

                                        *Attorneys for Fidelity National Information
                                        Services, Inc.*

/s/ David A. Roodman
David A. Roodman
BRYAN CAVE LLP
211 N. Broadway, Suite 3600
St. Louis, MO 63012-2750
(314) 259-2000

Robert G. Lancaster
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100

*Attorneys for Fiserv, Inc.; AFNB Holdings, Inc.; Bank of the West; Chisholm Bancshares, Inc.; First Community Bank, NA; First Texoma National Bank; FNB Financial Services, Inc.; Henderson Federal Savings Bank; Heritage Bank; Huntington Bancshares, Inc.; IBT Bancorp, Inc.; JLL Associates G.P. FCH, L.L.C.; The First National Bank of Livingston; American First National Bank; Carlile Bancshares, Inc.; Citizens 1st Bank; First Liberty National Bancshares, Inc.; Greater Southwest Bancshares, Inc.; Heritage Bancorp, Inc.; Hull State Bank; Huntington State Bank; Independent Bank of Texas; Joaquin Bankshares, Inc.; Lamar Bancorporation, Inc.; Lamar National Bank; Landmark Bank, NA; North Texas Bank, National Association; Northstar Bank of Texas; Peoples Bank; Texas Peoples National Bancshares, Inc.; Texas State Bank; The East Texas National Bank of Palestine; The First Liberty National Bank; The First National Bank of Kemp; The First National Bank of Trenton; The Landrum*

 /s/ Jay F. Utley
John G. Flaim
Jay F. Utley
W. Barton Rankin
Mackenzie M. DeWerff
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
(214) 978-3000

*Attorneys for Accessbank Texas; Beal Bank, SSB.; Beal Financial Corporation; Citizens National Bank; The First National Bank of Bells/Savoy (Now Cendera Bank, N.A.); Citizens State Bank; Colonial Holding Company; Colonial Savings, F.A.; Commerce National Financial Services, Inc.; Fayetteville Bank; First Bells Bankshares, Inc.; First Command Bank; First Command Financial Services, Inc.; First Community Bancshares, Inc.; First National Bank Texas D/B/A First Convenience Bank; Henderson Citizens Bancshares, Inc.; Industry Bancshares, Inc.; Industry State Bank; Lubbock National Bank; Pioneer Bank, S.S.B.; Premier Bancshares, Inc.; Sabine Bancshares, Inc.; Sabine State Bank and Trust Company; Southwest Bancorp, Inc.; The Stillwater National Bank and Trust Company (Now Bank SNB, National Association); Synergy Bank, S.S.B.; Texas First Bank; Texas Independent Bancshares, Inc.; Texas Security Bank; Texas Security Bankshares, Inc.; The First National Bank of Bellville; and The First National Bank of Shiner*

17

*Company; Trenton Bankshares, Inc.;
Valliance Bank; Valliance Financial Corp.;
Viewpoint Bank, N.A.; ViewPoint Financial
Group, Inc.; Veritex Community Bank;
WCM Holdings, Inc.; and FNB Company*


/s/ Russell Jones, Jr.
Russell Jones, Jr.
Jay Heidrick
POLSINELLI
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000

*Attorneys for Jack Henry & Associates,
Inc., Symitar Systems, Profitstars, Inc.,
Steele Holdings, Inc., American State Bank,
Collin Bank, Justin State Bank, Sulphur
Springs Bancshares, Inc., The City National
Bank Of Sulphur Springs, East Texas
Bancshares, Inc., First National Bank Of
Jasper, First State Bank (Livingston),
Overton Financial Corp, First State Bank
(Overton), Lindale State Bank, Van Alstyne
Financial Corporation, Texas Star Bank,
Paris Bancshares, Inc., The Liberty
National Bank In Paris, Independent Bank
Group, Inc., Independent Bank, South
Plains Financial, Inc., City Bank, SB&T
Holdings, Inc., State Bank And Trust
Company, Third Coast Bancshares, Inc.,
Third Coast Bank, SSB, Nexbank Capital,
Inc., Nexbank, SSB, First Private Holdings,
Inc., First Private Bank Of Texas, Golden
Bank, N.A., Green Bancorp, Inc.,
Greenbank, N.A., Midsouth Bancorp,
Midsouth Bank, N.A., United Heritage
Credit Union, Citizens Bancorp, Inc.,
Citizens National Bank, Emory Bancshares,*

/s/ Rick L. Rambo
Rick L. Rambo
Thomas R. Davis
Michael L. Raspino
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002
(713) 890-5000

*Attorneys for Directex Holding Corp,
Gladewater National Bank, East Texas
Financial Corporation, Citizens Bank, and
Computer Service Professionals, Inc.*

*and First National Bank Of Emory*

/s/ Robert D. Nelon
Robert D. Nelon
Phillip L. Free, Jr.
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
(405) 553-2828

*Attorneys for Bankers Bancorp of
Oklahoma, Inc. and The Bankers Bank*

/s/ Charles M. Hosch
Charles M. Hosch
STRASBURGER & PRICE - DALLAS
901 Main St., Suite 4300
Dallas, TX 75202
(214) 651-4678

*Attorneys for Advancial Federal Credit
Union*

/s/ Bryan G. Harrison
Bryan G. Harrison
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326
(404) 233-7000

*Attorneys for DATCU Credit Union*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2014, a copy of the foregoing REPLY TO DATATREASURY'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS was served by electronic means to the persons at the addresses listed:

| Counsel | Parties represented by one or more of the listed Counsel |
|---|---|
| **Andrew Joseph Wright**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd.<br>Suite 1900<br>Irving, TX 75039<br>(972) 831-1188<br>Fax: (972) 444-0716<br>Email: andrewjwright@me.com | DataTreasury |
| **Christian J. Hurt**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd.<br>Suite 1900<br>Irving, TX 75039<br>(972) 831-1188<br>Fax: (972) 444-0716<br>Email: christianhurt@nixlawfirm.com | |
| **Derek Tod Gilliland**<br>Nix Patterson & Roach, LLP - Daingerfield<br>205 Linda Drive<br>Daingerfield, TX 75638<br>(903) 645-7333<br>Fax: (903) 645-5389<br>Email: dgilliland@nixlawfirm.com | |
| **Edward K. Chin**<br>Nix Patterson & Roach, LLP - Irving<br>5215 North O'Connor Blvd. | |

i

Suite 1900
Irving, TX 75039
(972) 831-1188
Fax: (972) 444-0716
Email: edchin@me.com

**Elton Joe Kendall**
Kendall Law Group, LLP
3232 McKinney
Ste 700
Dallas, TX 75204
(214) 744-3000
Fax: (214) 744-3015
Email: jkendall@kendalllawgroup.com

**Eric M. Albritton**
ALBRITTON LAW FIRM
P.O. Box 2649
111 West Tyler, 75601
Longview, TX 75606
(903) 757-8449
Fax: (903) 758-7397
Email: ema@emafirm.com

**Karl Anthony Rupp**
Kendall Law Group, LLP
3232 McKinney
Ste 700
Dallas, TX 75204
(214) 744-3000
Fax: (214) 744-3015
Email: krupp@kendalllawgroup.com

**Kirk Austin Voss**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd.
Suite 1900
Irving, TX 75039
(972) 831-1188
Fax: (972) 444-0716

Email: kirkvoss@nixlawfirm.com

**Richard Benjamin King**
Nix Patterson & Roach, LLP -
Texarkana
2900 Saint Michael Drive
Suite 500
Texarkana, TX 75503
(903) 223-3999
Fax: (903) 223-8520
Email: benking@nixlawfirm.com

**Robert Winn Cutler**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd.
Suite 1900
Irving, TX 75039
(972) 831-1188
Fax: (972) 444-0716
Email: winncutler@nixlawfirm.com
*PRO HAC VICE*

**Ross Leonoudakis**
Nix Patterson & Roach, LLP - Irving
5215 North O'Connor Blvd.
Suite 1900
Irving, TX 75039
(972) 831-1188
Fax: (972) 444-0716
Email: rossl@nixlawfirm.com

**Thomas John Ward, Jr.**
Ward & Smith Law Firm
P.O. Box 1231
1127 Judson Road
Suite 220
Longview, TX 75606
(903) 757-6400
Fax: (903) 757-2323
Email: jw@wsfirm.com

| | |
|---|---|
| **Nelson James Roach**<br>Nix Patterson & Roach, LLP -<br>Daingerfield<br>205 Linda Drive<br>Daingerfield, TX 75638<br>(903) 645-7333<br>Fax: (903) 645-5389<br>Email: njroach@nixlawfirm.com | |
| **David A. Roodman**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-3600<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: daroodman@bryancave.com<br><br>**Nick E. Williamson**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-3600<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: nick.williamson@bryancave.com<br><br>**Ameer Gado**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102<br>(314) 259-2745<br>Fax: (314) 259-2020<br>Email: aagado@bryancave.com<br><br>**Emma C. Harty**<br>Bryan Cave LLP - St. Louis<br>211 N. Broadway | Fiserv, Inc.;<br><br>AFNB Holdings, Inc.;<br><br>Bank of the West;<br><br>Chisholm Bancshares, Inc.;<br><br>First Community Bank, NA;<br><br>First Texoma National Bank;<br><br>FNB Financial Services, Inc.;<br><br>Henderson Federal Savings Bank;<br><br>Heritage Bank;<br><br>Huntington Bancshares, Inc.;<br><br>IBT Bancorp, Inc.;<br><br>JLL Associates G.P. FCH, L.L.C.;<br><br>The First National Bank of Livingston;<br><br>American First National Bank;<br><br>Carlile Bancshares, Inc.;<br><br>Citizens 1st Bank;<br><br>First Liberty National Bancshares, Inc.;<br><br>Greater Southwest Bancshares, Inc.;<br><br>Heritage Bancorp, Inc.; |

iv

| | |
|---|---|
| Suite 3600<br>St. Louis, MO 63105<br>(314) 259-2000<br>Fax: (314) 259-2020<br>Email: emma.harty@bryancave.com | Hull State Bank; |
| | Huntington State Bank; |
| | Independent Bank of Texas; |
| | Joaquin Bankshares, Inc.; |
| | Lamar Bancorporation, Inc.; |
| **Michael Charles Smith**<br>Siebman Burg Phillips & Smith, LLP -<br>Marshall<br>P.O. Box 1556<br>Marshall, TX 75671-1556<br>(903) 938-8900<br>Fax: (972) 767-4620<br>Email: michaelsmith@siebman.com | Lamar National Bank; |
| | Landmark Bank, NA; |
| | North Texas Bank, |
| | National Association; |
| | Northstar Bank of Texas; |
| | Peoples Bank; |
| **Robert G. Lancaster**<br>Bryan Cave LLP - Santa Monica<br>120 Broadway<br>Suite 300<br>Santa Monica, CA 90401<br>(310)576-2100<br>Fax: (310) 576-2200<br>Email: rglancaster@bryancave.com | Texas Peoples National<br>Bancshares, Inc.; |
| | Texas State Bank; |
| | The East Texas National Bank of<br>Palestine; |
| | The First Liberty National Bank; |
| | The First National Bank of Kemp; |
| **D. Woodard Glenn**<br>Attorney at Law<br>2626 Cole Avenue<br>Suite 510<br>Dallas, TX 75204<br>(214) 871-9333<br>Fax: (214) 871-7131<br>Email: wglenn@dwgpc.com | The First National Bank of<br>Trenton; |
| | The Landrum Company; |
| | Trenton Bankshares, Inc.; |
| | Valliance Bank; |
| | Valliance Financial Corp.; |
| | Viewpoint Bank, N.A.; |
| | ViewPoint Financial Group, Inc.; |
| | Veritex Community Bank; |
| | WCM Holdings, Inc.; and |
| | FNB Company |
| **Jay Forrest Utley** | Fidelity National Information Services, |

| | |
|---|---|
| Baker & McKenzie<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3036<br>Fax: (214) 978-3099<br>Email: jay.utley@bakermckenzie.com | Inc.;<br><br>Accessbank Texas;<br><br>Beal Bank, SSB.;<br><br>Beal Financial Corporation;<br><br>Citizens National Bank; |
| **John G. Flaim**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3097<br>Fax: (214) 978-3099<br>Email: john.flaim@bakermckenzie.com | The First National Bank of Bells/Savoy (Now Cendera Bank, N.A.);<br><br>Citizens State Bank;<br><br>Colonial Holding Company;<br><br>Colonial Savings, F.A.;<br><br>Commerce National Financial Services, Inc.; |
| **Mackenzie Marie DeWerff**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3048<br>Fax: (214) 965-5946<br>Email:<br>mackenzie.dewerff@bakermckenzie.com | Fayetteville Bank;<br><br>First Bells Bankshares, Inc.;<br><br>First Command Bank;<br><br>First Command Financial Services, Inc.;<br><br>First Community Bancshares, Inc.;<br><br>First National Bank Texas D/B/A First Convenience Bank; |
| **Weldon Barton Rankin**<br>Baker & McKenzie - Dallas<br>2001 Ross Ave.<br>Suite 2300<br>Dallas, TX 75201<br>(214) 978-3000<br>Fax: (214) 978-3088<br>Email: bart.rankin@bakermckenzie.com | Henderson Citizens Bancshares, Inc.;<br><br>Industry Bancshares, Inc.;<br><br>Industry State Bank;<br><br>Lubbock National Bank;<br><br>Pioneer Bank, S.S.B.;<br><br>Premier Bancshares, Inc.;<br><br>Sabine Bancshares, Inc.; |
| **J. Pat Heptig**<br>Heptig Law Group, Ltd.<br>1700 Pacific Avenue<br>Suite 2650 | Sabine State Bank and Trust Company;<br><br>Southwest Bancorp, Inc.;<br><br>The Stillwater National Bank and Trust Company (now Bank SNB, National |

| | |
|---|---|
| Dallas, TX 75201<br>(214) 451-2154<br>Fax: (214) 306-5424<br>Email: pheptig@heptiglaw.com<br><br>**Bryan Haynes**<br>Scheef & Stone, L.L.P.<br>500 N. Akard<br>Suite 2700<br>Dallas, TX 75201<br>(214) 706-4234<br>Fax: (214) 706-4242<br>Email: bryan.haynes@solidcounsel.com<br><br>**James Mark Mann**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>(903) 657-8540<br>Fax: (903) 657-6003<br>Email: mark@themannfirm.com<br><br>**Stacie H. Tandy**<br>Mann Tindel & Thompson<br>300 W. Main<br>Henderson, TX 75652<br>(903) 657-8540<br>Fax: (903) 657-6003<br>Email: stacie@themannfirm.com | Association);<br><br>Synergy Bank, S.S.B.;<br><br>Texas First Bank;<br><br>Texas Independent Bancshares, Inc.;<br><br>Texas Security Bank;<br><br>Texas Security Bankshares, Inc.;<br><br>The First National Bank of Bellville; and<br><br>The First National Bank of Shiner |
| **Douglas Ray McSwane, Jr.**<br>Potter Minton, a Professional<br>Corporation<br>110 N College Avenue<br>Suite 500<br>Tyler, TX 75702<br>(903) 597-8311<br>Fax: (903) 593-0846<br>Email:<br>dougmcswane@potterminton.com | Jack Henry & Associates, Inc.,<br><br>Symitar Systems,<br><br>Profitstars, Inc.,<br><br>Steele Holdings, Inc.,<br><br>American State Bank,<br><br>Collin Bank,<br><br>Justin State Bank, |

**Jason Dwain Mazingo**
Potter Minton, a Professional
Corporation
110 N College Avenue
Suite 500
Tyler, TX 75702
(903) 525-2266
Fax: (903) 593-0846
Email: jasonmazingo@potterminton.com

**Jay E. Heidrick**
Polsinelli Shughart PC
6201 College Blvd.
Suite 500
Overland Park, KS 66211
(913) 451-8788
Fax: (913) 451-6205
Email: jheidrick@polsinelli.com

**Melissa S. Ho**
Polsinelli - Phoenix
One East Washington Street
Suite 1200
Phoenix, AZ 85004
(602) 650-2028
Fax: (602) 264-7033
Email: mho@polsinelli.com

**Russell Scarritt Jones, Jr.**
Polsinelli Shughart PC
120 W 12th Street
Suite 1600
Kansas City, MO 64105
(816) 421-3355
Fax: (816) 374-0509
Email: rjones@polsinelli.com

Sulphur Springs Bancshares, Inc.,

The City National Bank of Sulphur Springs,

East Texas Bancshares, Inc.,

First National Bank of Jasper,

First State Bank (Livingston),

Overton Financial Corp,

First State Bank (Overton),

Lindale State Bank,

Van Alstyne Financial Corporation,

Texas Star Bank,

Paris Bancshares, Inc.,

The Liberty National Bank In Paris,

Independent Bank Group, Inc.,

Independent Bank,

South Plains Financial, Inc.,

City Bank,

SB&T Holdings, Inc.,

State Bank and Trust Company,

Third Coast Bancshares, Inc.,

Third Coast Bank, SSB,

Nexbank Capital, Inc.,

Nexbank, SSB,

First Private Holdings, Inc.,

First Private Bank of Texas,

Golden Bank, N.A.,

Green Bancorp, Inc.,

Greenbank, N.A.,

Midsouth Bancorp,

| | |
|---|---|
| | Midsouth Bank, N.A., United Heritage Credit Union, Citizens Bancorp, Inc., Citizens National Bank, Emory Bancshares, and First National Bank of Emory |
| **Rick L. Rambo**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>(713) 890-5175<br>Fax: (713) 890-5001<br>Email: rrambo@morganlewis.com<br><br>**Thomas R. Davis**<br>Morgan Lewis & Bockius, LLP - Houston<br>1000 Louisiana Street<br>Suite 4000<br>Houston, TX 77002<br>(713) 890-5000<br>Fax: (713) 890-5001<br>Email: tdavis@morganlewis.com | Directex Holding Corp, Gladewater National Bank, East Texas Financial Corporation, Citizens Bank, and Computer Service Professionals, Inc. |
| **Robert D. Nelon**<br>Hall Estill Hardwick Gable Golden & Nelson PC - Oklahoma<br>100 North Broadway<br>Chase Tower<br>Suite 2900<br>Oklahoma City, OK 73102-8865<br>(405) 553-2805<br>Fax: (405) 553-2855<br>Email: bnelon@hallestill.com | Bankers Bancorp of Oklahoma, Inc. and The Bankers Bank |

ix

| | |
|---|---|
| **Melissa Richards Smith**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>(903) 934-8450<br>Fax: (903) 934-9257<br>Email: melissa@gillamsmithlaw.com<br><br>**Harry Lee Gillam, Jr.**<br>Gillam & Smith, LLP<br>303 South Washington Avenue<br>Marshall, TX 75670<br>(903) 934-8450<br>Fax: (903) 934-9257<br>Email: gil@gillamsmithlaw.com | |
| **Charles M. Hosch**<br>Strasburger & Price - Dallas<br>901 Main St.<br>Suite 4300<br>Dallas, TX 75202<br>(214) 651-4678<br>Fax: (214) 651-4330<br>Email: charles.hosch@strasburger.com | Advancial Federal Credit Union |
| **Bryan Guy Harrison**<br>Morris, Manning & Martin, LLP<br>1600 Atlanta Financial Center<br>3343 Peachtree Road, NE<br>Suite 1600<br>Atlanta, GA 30326<br>(404) 233-7000<br>Fax: (404) 365-9532<br>Email: bgh@mmmlaw.com<br><br>**Randy L. Roberts**<br>Blalack & Williams, PC<br>5550 LBJ Freeway<br>Suite 400<br>Dallas, TX 75240 | DATCU Credit Union |

| (214) 630-1916<br>Fax: (214) 630-1112<br>Email: rroberts@blalack.com | |
|---|---|
| **Christopher Benton Henry**<br>Minor & Jester<br>515 S. Carroll Blvd.<br>Suite A<br>Denton, TX 76202<br>(940) 387-7585<br>Fax: (940) 808-0054<br>Email: mjcourt@thelocalcircuit.net | Pilot Point Bancorp, Inc.<br><br>PointBank |

/s/ Daniel C. Cooley

Daniel C. Cooley

FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:  (202) 408-4000

Miscellaneous Docket No. 14-138

_____

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE FEDERAL CIRCUIT**

_____

IN RE FIDELITY NATIONAL INFORMATION SERVICES, INC., FISERV, INC.,
JACK HENRY & ASSOCIATES, INC., ET AL.,

*Petitioners.*

_____

On Petition for a Writ of Mandamus to the United States District Court for the
Eastern District of Texas, Marshall Division, in Civil Action Nos. 2:13-cv-00431,
2:13-cv-00432, and 2:13-cv-00433

_____

**EXHIBITS TO**

**REPLY TO DATATREASURY'S RESPONSE TO**

**PETITION FOR WRIT OF MANDAMUS**

# EXHIBIT W

1

2    UNITED STATES PATENT AND TRADEMARK OFFICE

3      BEFORE THE PATENT TRIAL AND APPEAL BOARD

4

     --------------------------------X

5   FIDELTY NATIONAL INFORMATION

    SERVICES, INC.,

6

                    Petitioner,

7

              VS.

8

    DATA TREASURY CORPORATION,

9

                    Patent Owner.

10  --------------------------------X

11

12

13         TELEPHONIC CONFERENCE CALL

14           Thursday, May 29, 2014

15

16  BEFORE:  Administrative Patent Judges

17          MICHAEL P. TIERNEY

18          WILLIAM V. SAINDON

19          MATTHEW R. CLEMENTS

20

21

22

23  Reported by:

    AYLETTE GONZALEZ, RPR, CLR, CCR

24  JOB NO. 80568

25

Page 2

```
 1
 2   A P P E A R A N C E S:
 3
 4   FINNEGAN, HENDERSON, FARABOW, GARRETT &
 5   DUNNER
 6   Counsel for Petitioner
 7     901 New York Avenue, N.W.
 8     Washington, D.C. 20001
 9   BY:  ERIKA HARMON ARNER, ESQ., Lead Counsel
10   BY:  DARREN JIRON, ESQ.
11   BY:  RACHEL EMSLEY, ESQ.
12   BY:  KEVIN RODKEY, ESQ.
13
14
15   HERSHKOVITZ & ASSOCIATES
16   Counsel for Patent Owner
17     2845 Duke Street
18     Alexandria, Virginia  22314
19   BY:  DAVID HERSHKOVITZ, ESQ.
20
21
22
23
24
25
```

Page 3

```
 1       CONFERENCE CALL (5/29/14)
 2       MR. TIERNEY:  Thank you.  Today we
 3   have this conference call.  We have
 4   CBM2014-00020/00021.
 5       Patent owner, please identify
 6   counsel that's representing them on
 7   the call today.  Could we have a
 8   representative from the patent owner?
 9       I'm not hearing any representative
10   of the patent owner.
11       Petitioner, I believe you
12   indicated that the court reporter and
13   you are on the line.
14       MS. ARNER:  Yes, we are here.
15   Erika Arner, lead counsel for the
16   petitioner and I'm joined by three of
17   my colleagues.
18       JUDGE TIERNEY:  Thank you.
19       Is there any indication from
20   patent owner?  They saw the list of
21   proposed motion.  Was there any
22   indication that they were not going to
23   be able to make the call today?
24       MS. ARNER:  No, sir.  We haven't
25   heard anything.
```

Page 4

```
 1       CONFERENCE CALL (5/29/14)
 2       JUDGE TIERNEY:  Again, I'll ask is
 3   patent owner on the line?  If you are,
 4   speak up.
 5       Okay, the court reporter, are you
 6   on the line for the patent owner or
 7   are you on the line for the
 8   petitioner?
 9       THE COURT REPORTER:  I'm here for
10   the petitioner.
11       JUDGE TIERNEY:  Okay, let's stop
12   the transcript at this point for just
13   a moment.
14       (Whereupon, at this time, a short
15   break was taken.)
16       JUDGE TIERNEY:  Okay.  If we can
17   do a quick rollcall of who's on the
18   call today starting with the patent
19   owner followed by the petitioner.
20       As you know, on the line are Judge
21   Clements, Judge Saindon as well as
22   myself.
23       We already introduced Ms. Arner as
24   well as others.
25       MR. HERSHKOVITZ:  Hi.  I'm Dave
```

Page 5

```
 1       CONFERENCE CALL (5/29/14)
 2   Hershkovitz and it will just be myself
 3   today.
 4       MS. ARNER:  Erika Arner.  Also
 5   with me are Darren Jiron, Kevin Rodkey
 6   and Rachel Emsley.
 7       JUDGE TIERNEY:  Thank you.
 8       So to begin the call today, I see
 9   the patent owner filed a list of
10   proposed motions, I'd like to go over
11   those first, unless there's something
12   I need to discuss before we go over
13   the motions list.
14       Hearing nothing, I will begin with
15   the patent owner's motion.
16       Mr. Hershkovitz, if you could walk
17   us through the list to the extent
18   there's a difference between the
19   00020-case and the 00021 case, please
20   identify any differences, otherwise
21   we'll assume it's effective for both
22   cases.  If you would begin.
23       Mr. Hershkovitz, I believe your
24   first motion is identified as a motion
25   to amend, maybe you'd like to start
```

2 (Pages 2 to 5)

1    CONFERENCE CALL (5/29/14)
2  there.
3     MR. HERSHKOVITZ:  Yes.  In fact,
4  this applies to pretty much all the
5  motions we filed, that simply being
6  filed in abundance of caution.
7  Currently, we have not completed the
8  process of consulting with our client
9  to see if there is, in fact, a desire
10  or a need to file any amendments, but
11  just this case, when we complete the
12  consultations with our client, just in
13  case we decide that we would like to
14  file an amendment, that was the sole
15  purpose of this motion, just to the
16  retain the option.  But we do not
17  currently have any concrete plans to
18  file an amendment.
19     JUDGE TIERNEY:  Okay, thank you,
20  Mr. Hershkovitz for identifying.  This
21  does meet the very minimum requirement
22  of confirming with the board and when
23  I say minimum, it is the minimum that
24  you identified it.
25     To set up abundance of caution

1  CONFERENCE CALL (5/29/14)
2  though, you may file your motion to
3  amend, however, before filing, I would
4  indicate that should you wish to have
5  any information about how the board
6  handles motions to amend, please
7  confirm with the board.  We're happy
8  to discuss the motion to amend and
9  what the process is like.
10     As you're aware, it's distinct
11  from the ex parte examination or even
12  the ex parte reexamination process,
13  much more limited in the fact that
14  there is basically going to be one
15  motion to amend here, because we do
16  have the 12-month statutory time,
17  which we should try to complete these
18  proceedings in.
19     Second motion to amend would need
20  to show good cause.  It's not often
21  given because of potential delay in
22  cause.  That's not to say that we
23  wouldn't have a second motion to
24  ament, just realize it is much more --
25  a little more burdensome to both the

1    CONFERENCE CALL (5/29/14)
2  parties and the board to take a second
3  motion to amend.
4     In essence, the first motion to
5  amend, try to make it in the best
6  light as possible.
7     MR. HERSHKOVITZ:  Thank you for
8  the advice and I will certainly heed
9  that advice.
10     JUDGE TIERNEY:  You're welcome.
11  And to the extent you wish to have
12  more details on it, we're open to
13  talking about it now or later.  Since
14  it's not clear you're going to file
15  one, I would suggest later.  If you'd
16  like to discuss more now, please
17  indicate, we'll happy to have a
18  conversation.
19     MR. HERSHKOVITZ:  No, I don't
20  really have anything to discuss at
21  this point.
22     JUDGE TIERNEY:  Okay.  Well,
23  hearing that, should we move on to
24  your proposed motion to exclude
25  evidence?

1  CONFERENCE CALL (5/29/14)
2     MR. HERSHKOVITZ:  Yes.  As I said
3  in the very beginning, all these are
4  motions just to put on the record the
5  fact that we retained the option to
6  file these motions.  We do not
7  currently have any concrete plans to
8  file any of the four motions that
9  harvested at this point.
10     JUDGE TIERNEY:  Okay.  Hearing
11  that, I'm going to go a little bit
12  quicker.
13     So on the motion to exclude, no
14  authorization necessary.  It is
15  conflict state of our schedule.
16  Should be needed by your party, if you
17  have a motion to exclude, please go
18  ahead and file such motion.  You would
19  not need to contact the board before
20  filing it.
21     However, for additional motion
22  discovery, which is your third motion
23  on your motions list, you would need
24  to contact the board and get
25  authorization for motion for

3 (Pages 6 to 9)

Page 10

1    CONFERENCE CALL (5/29/14)
2  additional discovery at the time
3  you actually seek the additional
4  discovery, you'll have to identify
5  certain things, including what
6  discovery you're seeking, and remember
7  keep it focused, this is not an
8  open-ended District Court discovery
9  court process.  Besides identifying
10  with a little more particularity and
11  focus, you also have to show that it
12  is in the interest of justice that you
13  be provided this discovery.
14    So with that general background,
15  do you have any questions on motions
16  for additional discovery?
17    MR. HERSHKOVITZ:  I do not.
18    JUDGE TIERNEY:  Okay.  Motion for
19  observation on cross-examination,
20  again, it's not quite needed for
21  authorization, but you may file it at
22  the due date given in the scheduling
23  order, should you feel you need to
24  file such an observation.
25    Now, while we've gone over and

Page 11

1    CONFERENCE CALL (5/29/14)
2  discussed these motions generally, the
3  question I have for you is we have a
4  certain scheduling order that went
5  out.  Do you have any changes you need
6  to be made or requests you need to
7  have changed?  Do you have any changes
8  you'd like to identify to the
9  scheduling order?
10    MR. HERSHKOVITZ:  No.  We looked
11  at the scheduling order and we believe
12  we can live with those deadlines and
13  what needs to be done within those
14  deadlines.
15    JUDGE TIERNEY:  Before I turn over
16  to the petitioner, I'd like to know
17  from patent owner if there's anything
18  else they'd like to discuss on the
19  call regarding the motion, scheduling,
20  et cetera.
21    MR. HERSHKOVITZ:  I'm sorry, would
22  you repeat that?
23    JUDGE TIERNEY:  Yes.  Before we
24  turn over, I was going to turn the
25  phone over to the petitioner, hear

Page 12

1    CONFERENCE CALL (5/29/14)
2  from them concerning the proceeding.
3    But before I do so, I wanted to
4  know if there's any additional issues
5  you'd like to discuss, for example, if
6  there was anything in particular about
7  timing that you have questions about,
8  process questions, any of those
9  questions that you may wish to have us
10  elaborate on for you.
11    MR. HERSHKOVITZ:  No, not at this
12  point, thank you.
13    JUDGE TIERNEY:  Okay, thank you.
14    Now, at this time, I'd like to
15  hear from petitioner.  Are there any
16  questions or concerns that you have
17  regarding these cases?
18    I believe you had indicated that
19  you would like to expedite.  I'll let
20  you have the floor and you inform the
21  board as to what you're seeking here.
22    MS. ARNER:  Okay.  Thank you,
23  Your Honor.
24    We would like to seek the board's
25  authorization to file a motion to

Page 13

1    CONFERENCE CALL (5/29/14)
2  expedite these proceedings.  We're
3  prepared to discuss that today, a
4  little bit of our thinking there, if
5  you're willing to entertain it.
6    JUDGE TIERNEY:  Yes, if you could
7  be succinct, but we're willing to
8  listen.
9    MS. ARNER:  Okay.  Well, the
10  reason that we are seeking to expedite
11  the proceeding is because there is a
12  District Court litigation proceeding
13  in the Eastern District of Texas, in
14  parallel with these proceedings and
15  despite the petitioner's repeated
16  attempts at the District Court to get
17  a decision on a motion to stay those
18  proceedings pursuant to Section 18 of
19  the AIA, in light of this board's
20  proceeding, in the institution
21  decision, the District Court has not
22  yet acted on the motion to stay that
23  was filed many months ago.  And so as
24  the District Court proceedings
25  continue, they're on a very aggressive

4 (Pages 10 to 13)

1     CONFERENCE CALL (5/29/14)
2   schedule at the District Court,
3   scheduled for trial in April.  And
4   given the board's timeline for this
5   proceeding, it's possible that this
6   proceeding could still be going on and
7   prior to a final written decision,
8   when the District Court case goes to
9   trial.  And we are seeking the board's
10  permission to file a motion to request
11  an expedited schedule, such that the
12  proceedings before the board could
13  complete before trial.  And really,
14  that's stemming from the congressional
15  intent that these proceedings, to the
16  extent possible, avoid duplication,
17  although that's really in the hands of
18  the District Court at this point, but
19  also simplify issues for the District
20  Court.  And in that way, by having a
21  final decision, one way or the other,
22  from this board before trial, that
23  part of congressional intent would be
24  affected, either simplifying the
25  validity issues by binding the

1     CONFERENCE CALL (5/29/14)
2   petitioner with the estoppel or
3   otherwise disposing of issues before
4   trial.
5     JUDGE TIERNEY:  Let's have you
6   consult with the patent owner on your
7   request.
8     MS. ARNER:  No, we listed this on
9   our motions list on Tuesday.
10    JUDGE TIERNEY:  We have no idea at
11  this point if patent owner is amenable
12  to expediting.
13    MS. ARNER:  I do not, no.
14    JUDGE TIERNEY:  Let's hear from
15  the patent owner.  What is your
16  position with respect request to
17  expedite?
18    MR. HERSHKOVITZ:  We would oppose
19  having that request granted,
20  Your Honor.  This particular patent
21  owner, it almost borders on
22  harassment.  We've had quite a number
23  of reexamination requests, IPOs, CBMs
24  that have been filed by Defendant and
25  while we can live with this, as I

1     CONFERENCE CALL (5/29/14)
2   indicated before, while we can live
3   with the deadlines which are pretty
4   tight, that the board has stepped in
5   the scheduling order, it would make it
6   virtually impossible for us to have
7   the proceedings further expedited, in
8   light of the fact that we do have
9   other proceedings that we're handling
10  for this particular patent owner.
11    JUDGE TIERNEY:  Let me ask the
12  question, how many litigations you
13  have going on with this patent?
14    MR. HERSHKOVITZ:  Was that
15  question directed to me?
16    JUDGE TIERNEY:  Yes, it is.
17    MR. HERSHKOVITZ:  I believe we
18  have six CBMs for --
19    JUDGE TIERNEY:  My apologies.  My
20  error.  How many litigations as in how
21  many different court cases before
22  District Court do you currently have
23  ongoing?
24    MR. HERSHKOVITZ:  While I don't
25  handle the litigation, I believe every

1     CONFERENCE CALL (5/29/14)
2   one of the cases that are currently
3   under CBM or IPO all involve at the
4   same time litigation.
5     JUDGE TIERNEY:  Do you have any
6   idea how many different cases are
7   currently in litigation on these
8   particular patents?
9     MS. ARNER:  I'm aware of at least
10  the one FIS is involved in and it was
11  three separate litigations filed
12  against about a total 120 defendants
13  and they've been consolidated in the
14  Eastern District of Texas so there's
15  at least that much going on right now.
16    JUDGE TIERNEY:  That's what I'm
17  trying to understand because
18  Mr. Hershkovitz is telling us that the
19  fact that there's -- I think he
20  identified up to maybe six different
21  proceedings here, overly burdensome
22  but on the other hand, I was curious
23  to find how many different litigations
24  there are and we're finding out
25  there's 120 different defendants.

1    CONFERENCE CALL (5/29/14)
2        Mr. Hershkovitz, the fact that
3    your client's able to handle 120
4    different defendants kind of plays
5    against you saying that you're unable
6    to handle six proceedings here. Can
7    you reconcile that for us?
8        MR. HERSHKOVITZ: Yes, I believe
9    there are nine proceedings, six CBMs
10   and three IPOs.
11       JUDGE TIERNEY: Okay, apologies.
12       MR. HERSHKOVITZ: Well, I'm afraid
13   I don't have a good answer for you.
14   What takes place in litigation is
15   handled by entirely different law
16   firms.
17       Our firm has been retained to
18   handle any post-grant proceedings for
19   Data Treasury and so the six CBMs and
20   three IPOs are all handled by our
21   firm, and that's in addition to
22   ex parte every exam on the same
23   patent.
24       JUDGE TIERNEY: It's your opinion
25   that that's overly voluminous work,

1    CONFERENCE CALL (5/29/14)
2    you're unable to do anything on more
3    of an expedited nature in these
4    particular types of cases?
5        MR. HERSHKOVITZ: Correct. If all
6    we had to do is deal with this
7    particular client, but as you might
8    imagine, we do have other clients.
9        JUDGE TIERNEY: But that's your
10   client's choice, isn't that? I'm
11   sorry, but what you're telling us and
12   what I'm gathering is your client is
13   able to go out and have 120 different
14   defendants brought to District Court
15   and handle all of that at the same
16   time, but at the same time, when it
17   comes to this office, you're telling
18   us we can't handle nine cases, because
19   we selected only one law firm. I'm
20   trying to reconcile this to seemingly
21   inconsistent positions.
22       MR. HERSHKOVITZ: Well, I think
23   I'm afraid I don't have any other
24   reasons to give you. It was our
25   client's choice to select our firm

1    CONFERENCE CALL (5/29/14)
2    since we handled prior ex parte
3    re-exams. We were the most familiar
4    firm with these particular patents and
5    naturally, they opted to have us
6    continue.
7        The question becomes if the
8    defendants then get into a practice of
9    filing, having different firms, these
10   are not the same firms, hiring
11   different firms attack the validity of
12   different patents on different grants,
13   it seems to me that they would succeed
14   at their strategy to try to overwhelm
15   a patent owner by harassing them with
16   multiple IPOs, CBMs and then basically
17   give a patent owner a choice, either
18   fight back by distributing the
19   workload to different firms where
20   there may be a lack of familiarity
21   with what's been going on on the part
22   of some firms or we'll make it so
23   impossible for you to have the same
24   firm handle it, that we're just going
25   to bombard you with these different

1    CONFERENCE CALL (5/29/14)
2    requests, it's -- I think --
3        JUDGE TIERNEY: How many different
4    litigation counsel are there on this
5    patent then with 120 different
6    defendants? Do you have even a
7    ballpark idea?
8        MR. HERSHKOVITZ: I do not.
9        JUDGE TIERNEY: I think what I'm
10   going to do now is I'd like --
11   Ms. Arner, I assume what your request
12   was, I thought I heard you say you'd
13   like to file a motion on this?
14       MS. ARNER: Yes, we'd like to file
15   a motion to sort of set forth how our
16   proposed expedited schedule would
17   still satisfy the statutory
18   requirements that would need to be met
19   by the proceeding and also to point
20   out that the two issues in this
21   particular case don't involve any
22   prior art, legal issues and already
23   been briefed in the petition and
24   preliminary response.
25       JUDGE TIERNEY: Thank you,

1    CONFERENCE CALL (5/29/14)
2    Ms. Arner. We would authorize, we
3    want to identify of course the time
4    frame. We want to identify what your
5    position is with respect to A, assess
6    balancing the equities. We need to
7    take this in expedited fashion for
8    your particular client, but also be
9    aware what would be prejudicial to
10   your opponent.
11       Because what we're going to do is
12   we also extend a motion, we want to of
13   course hear from the patent owner.
14   They've already identified that they
15   feel there may be some level of
16   prejudice. We want to give them an
17   opportunity to identify the prejudice
18   and we have to weigh these things out.
19       But let me confer with my panel
20   member. We're going to take a brief
21   recess. I'll put the phone on mute,
22   consult my panel member that's in the
23   room and also the other panel member
24   and we'll be getting back to you in
25   approximately three minutes.

1    CONFERENCE CALL (5/29/14)
2    (Whereupon, at this time, a short
3    break was taken.)
4    JUDGE TIERNEY: Judge Clements, is
5    there any objection to authorizing a
6    motion that would expand upon the
7    basis for needing to expedite?
8    JUDGE CLEMENTS: I have no
9    objection.
10   JUDGE TIERNEY: Ms. Arner, the
11   panel has no objection to authorizing
12   such a motion, but we do want to be
13   clear on what we're authorizing.
14       Can you please identify a time
15   frame that you're suggesting filing
16   such a motion and how many pages
17   you're requesting for such motion.
18       MS. ARNER: We can have our motion
19   filed by Monday, if possible, to allow
20   the board to make a decision next week
21   and I think probably the normal rule
22   for the motion is 15 pages.
23   JUDGE TIERNEY: I understand what
24   the rules are and we could go straight
25   by the rules but I'm asking what the

1    CONFERENCE CALL (5/29/14)
2    need is.
3    MS. ARNER: I think we could
4    answer the questions you asked about
5    time frame, equities, prejudice in ten
6    pages.
7    JUDGE TIERNEY: Judge Clements, do
8    you have any objection to having this
9    filed by Monday with ten pages?
10   JUDGE CLEMENTS: No objection from
11   me.
12   JUDGE TIERNEY: The panel
13   authorizes a motion to come in next
14   Monday. The motion is being requested
15   to expedite the proceeding. That
16   motion is limited to ten pages.
17       I'd like to turnover to the patent
18   owner and patent owner, you would like
19   to file -- I believe you indicated you
20   would like to oppose such a motion?
21   MR. HERSHKOVITZ: That is correct,
22   Your Honor.
23   JUDGE TIERNEY: When would you
24   like to have an opposition filed?
25   When is convenient for your party?

1    CONFERENCE CALL (5/29/14)
2    MR. HERSHKOVITZ: I would say
3    within a week to ten days, but give us
4    time to consult with the client, a
5    week to ten days after the filing of
6    petitioner's motion.
7    JUDGE TIERNEY: So if they're
8    filing their motion on June 2nd, what
9    date are you looking at; June 9th,
10   10th, 11th, one of those days, which
11   one?
12   MR. HERSHKOVITZ: We'll file it as
13   soon as we can. Let me say June 15th
14   at this point, if I could.
15   JUDGE TIERNEY: That actually
16   wasn't the option I provided.
17   MR. HERSHKOVITZ: I'm sorry.
18   JUDGE TIERNEY: I guess I'll take
19   it that you're asking for June 11th of
20   the days I asked for.
21   MR. HERSHKOVITZ: Yes.
22   JUDGE TIERNEY: June 11th, we'll
23   have an opposition to be filed. The
24   motion will be ten pages, I'll assume.
25   I'd like to make sure. Are you asking

7 (Pages 22 to 25)

Page 26

1    CONFERENCE CALL (5/29/14)
2  for ten pages also?
3      MR. HERSHKOVITZ:  Yes.
4      JUDGE TIERNEY:  Okay.  You're
5  authorized to file an opposition by
6  June 11th and the opposition will be
7  limited to ten pages as the motion was
8  also limited to ten pages.
9      Are there any questions that the
10 patent owner has regarding what we're
11 authorizing today?
12     MR. HERSHKOVITZ:  No.
13     JUDGE TIERNEY:  Petitioner, is
14 there any question regarding the scope
15 of the opposition?
16     MS. ARNER:  No, sir.
17     JUDGE TIERNEY:  Petitioner, we
18 walked through your motions list.  Is
19 there anything else in the motions
20 list that we need to discuss today?
21     MS. ARNER:  No, sir, we're all
22 set.
23     JUDGE TIERNEY:  Is there anything
24 from the patent owner?  I have a board
25 issue I'd like to discuss but is there

Page 27

1    CONFERENCE CALL (5/29/14)
2  anything, before I go to board issues,
3  from the patent owner?
4      MR. HERSHKOVITZ:  No, Your Honor.
5      JUDGE TIERNEY:  The board would
6  like to briefly discuss the request
7  for rehearing that was filed by the
8  petitioner.  The request in particular
9  goes to written description.
10     Ms. Arner, if you could briefly
11 take, when I say two minutes, please
12 just take two minutes, to summarize
13 your motion -- sorry, your request for
14 the rehearing.
15     MS. ARNER:  Okay, thank you,
16 Your Honor.
17     The request involves the phrase
18 within and between subsystems that
19 appears in all of the claims in both
20 of the patents.  We're talking about
21 the '988 patent and '173 patent.  The
22 board construed within and between to
23 mean that there are communications
24 within subsystems on the same level as
25 well as between subsystems on one

Page 28

1    CONFERENCE CALL (5/29/14)
2  level and the higher level and the
3  hierarchy and there's a figure in the
4  patent that depicts that.
5      Despite that claim construction
6  though, the board found that there was
7  written description support for the
8  full -- for the claim language within
9  and between, despite the fact that the
10 specification makes no mention of
11 communication between subsystems on
12 the same level of the hierarchy, but
13 instead talks only about subsystems
14 communicating up or down the hierarchy
15 and not across that same level.
16     And in our rehearing petition, we
17 pointed out our position that the
18 board may have overlooked the full
19 scope of the claim by finding the
20 exact words within and between that
21 did appear in the patent, that that
22 was enough, but under the LizardTech
23 case, a simple statement like that is
24 not enough to show full written
25 description support for the full scope

Page 29

1    CONFERENCE CALL (5/29/14)
2  of the claim, which is that nowhere
3  else in the specification that there
4  are communications both across the
5  same level and up and down among
6  levels.  And because the patent only
7  describes communication up and down,
8  that the claim lacks a written
9  description to support the phrase
10 within and between as construed by the
11 board.
12     JUDGE TIERNEY:  I've consulted the
13 panel on this.  We appreciate your
14 comments.  The exact language does
15 appear in the specification.  It's on
16 a summary I mentioned, one of ordinary
17 skill in the art understanding the
18 meaning of term.  What I also
19 understand the meaning of the term as
20 described in the summary I mentioned.
21     A request for rehearing has been
22 considered, but is denied.
23     Any further questions starting
24 with from petitioner?
25     MS. ARNER:  Your Honor, will there

8 (Pages 26 to 29)

1    CONFERENCE CALL (5/29/14)
2  be a written decision denying the
3  rehearing request as well?
4    JUDGE TIERNEY:  To the extent, I
5  put out a written decision on this, it
6  will be very succinct.  We believe
7  that the specification is clear.
8    We understand that the petitioner
9  has taken a certain meaning from the
10  term.  We agree with that meaning.  We
11  also look at the term as it appears in
12  the specification and one of ordinary
13  skill in the art would understand the
14  meaning of the term understood in the
15  summary.
16    We understand the petitioner's
17  position in that there's certain
18  volumes not showing this, especially
19  in the drawings, however, inferred
20  embodiments do not control written
21  description.  You have to look at the
22  totality of the specification.
23    Any further questions?  Hearing
24  none, patent owner, are there any
25  questions today?

1    CONFERENCE CALL (5/29/14)
2    MR. HERSHKOVITZ:  I don't have any
3  questions.  I have a comment on the
4  issue we just discussed.  I'm not sure
5  how that will be handled.
6    I have authorized the filing of an
7  opposition to that request for
8  rehearing and it's either been filed
9  or about to be filed today.  I'm glad
10  to hear the board's decision on the
11  issue.  So I don't know what the
12  impact of that opposition will be at
13  this point.
14    JUDGE TIERNEY:  Mr. Hershkovitz,
15  apologies for interrupting, but I just
16  want to point out, you did not ask for
17  authorization to file an opposition to
18  request rehearing.  Should you file
19  it, it will be expunged.  It was not
20  authorized and at this point, since I
21  already denied it, unless you explain
22  why we need to have your opposition
23  put into the file, I'm not going to go
24  ahead and ask the panel to authorize
25  the filing of such.

1    CONFERENCE CALL (5/29/14)
2    MR. HERSHKOVITZ:  If it has not
3  been filed, I will stop the filing.
4  It does seem to be moot at this point.
5  It basically took the board's view.
6  That's all we attempted to do.
7    I apologize for my neglect in
8  requesting a permission to file that
9  opposition.
10    JUDGE TIERNEY:  Just to let you
11  know, in the future, please contact
12  the board.  Again, the purpose of
13  these proceedings is to ensure we
14  provide a streamline process.  One
15  that's an alternative to the court.
16  It's less expensive.
17    One of the things we're doing is
18  not encouraging filing of papers that
19  are unnecessary.  In this instance,
20  given that we denied the request for
21  essentially the same reasons provided
22  by the patent owner, in the sense that
23  we found the support to be sufficient,
24  it was unnecessary to file an
25  opposition.  Hearing that, there does

1    CONFERENCE CALL (5/29/14)
2  not appear to be any need for an
3  opposition that is authorized.
4    Going forward, should you feel the
5  need to file an opposition to request
6  rehearing of such, please contact the
7  board, we will authorize it if it's
8  needed.  If it's a case like this,
9  again, where the board is not inclined
10  to grant the request, it's likely that
11  we would not authorize the filing of
12  any future oppositions to request
13  rehearing.
14    MR. HERSHKOVITZ:  Thank you.  I
15  will remember that.
16    JUDGE TIERNEY:  Not a problem.
17    With that as background, is there
18  anything else, patent owner, you'd
19  like to discuss today before we
20  adjourn?
21    MR. HERSHKOVITZ:  No, not at this
22  point, no.
23    JUDGE TIERNEY:  Petitioner, is
24  there anything else you'd like to
25  bring up?

Page 34

1      CONFERENCE CALL (5/29/14)
2      MS. ARNER:  No, sir.
3      JUDGE TIERNEY:  With that, I
4  believe it's the petitioner who
5  brought the Court Reporter today.
6      MS. ARNER:  That's correct.
7      JUDGE TIERNEY:  Please provide a
8  copy of the transcript in due course
9  as an exhibit.  We'd appreciate it.
10     MS. ARNER:  We will thank you.
11     JUDGE TIERNEY:  Thank you
12 everyone.  We're adjourned.  Thank
13 you.
14     (Time noted:  4:00 p.m.)
15
16
17
18
19
20
21
22
23
24
25

Page 35

1      CONFERENCE CALL (5/29/14)
2      C E R T I F I C A T E
3
4  STATE OF NEW YORK      )
5                        : SS.:
   COUNTY OF RICHMOND     )
6
7      I, AYLETTE GONZALEZ, a Notary Public
8  for and within the State of New York, do
9  hereby certify that I am not related to any
10 of the parties to this action by blood or by
11 marriage and that I am in no way interested
12 in the outcome of this matter.
13     IN WITNESS WHEREOF, I have hereunto
14 set my hand this 2nd day of June, 2014.
15
16     _____
          AYLETTE GONZALEZ
17
18
19
20
21
22
23
24
25

10 (Pages 34 to 35)

# EXHIBIT X

Paper No. ___
Filed June 2, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————————

BEFORE THE PATENT TRIAL AND APPEAL
BOARD

———————————————

Fidelity National Information Services, Inc.,
Petitioner

v.

DataTreasury Corp.,
Patent Owner

———————————————

Case CBM2014-00020
Patent No. 6,032,137

Case CBM2014-00021
Patent No. 5,910,988

———————————————

Before MICHAEL P. TIERNEY, WILLIAM V. SAINDON, and MATTHEW R.
CLEMENTS, *Administrative Patent Judges*

**PETITIONER'S REQUEST FOR EXPEDITED DETERMINATION OF
PATENTABILITY UNDER 35 U.S.C. §§ 101 and 112**

Petitioner's Request for Expedited Determination of Patentability

Petitioner Fidelity National Information Services, Inc. ("FIS"), requests that the

Board expedite the covered business method review of U.S. Patent No. 5,910,988 and

U.S. Patent No. 6,032,137 under 35 U.S.C. §§ 101 and 112.[1] Expediting these

proceedings would effectuate Congressional intent and would not unduly prejudice

Patent Owner, given the balance of the equities. The related district court litigation

filed by Patent Owner against Petitioner and 134 other defendants currently follows

an aggressive schedule culminating in jury selection on April 13, 2015, which is two

weeks prior to the statutory deadline for a Final Written Decision in these

proceedings. Ex. 1058 at 1 (setting district court schedule). Petitioner seeks to

expedite these proceedings to effectuate Congress's intent in creating CBM

proceedings to "limit unnecessary and counterproductive litigation costs" by

narrowing the disputed issues for trial. *See, e.g.*, Ex. 1059, 77 Fed. Reg. 48,612 (Aug.

14, 2012). Expediting these CBM proceedings may help avoid duplication of judicial

effort, inconsistent results, and at least some of the expense of the parallel district

court litigation.

## I.    CONSIDERATION OF THE '988 AND '137 PATENT CLAIMS SHOULD BE EXPEDITED

Expediting these CBM proceedings will fulfill the goals of Section 18 review.

Here, early resolution on the merits would further the Board's goal of "establish[ing] a

---

[1] Authorization for this motion was granted during the initial conference call on May 29, 2014. Ex. 1057 at 24:12-16.

Petitioner's Request for Expedited Determination of Patentability

more efficient and streamlined patent system that will improve patent quality and limit

unnecessary and counterproductive litigation costs" by narrowing the disputed issues.

*See, e.g.*, Ex. 1059. Congress created Section 18 as an alternative to litigation, and with

the DataTreasury patents in mind. *See* CBM 2014-00021, Paper 002, at 7-8. Congress's

intent, at least in part, was for the CBM statute to preclude continued harassment of

the banking industry based on *these* patents. *Id.*

Expediting the schedule in these proceedings, even modestly, will result in

efficiencies and cost savings for all parties because issues for trial will be narrowed. In

2013, Patent Owner filed three lawsuits, naming 135 defendants (comprising 127

entities), in the Eastern District of Texas. Ex. 1061 at 10. Though Petitioner and

several other defendants have moved for stays of the litigations in view of CBM2014-

00020 and -00021, the first motion to stay having been filed on December 18, 2013,

the District Court has not ruled on any of the stay motions. Instead, the court

consolidated these cases and adopted an aggressive schedule. *Id.* at 9-11. The present

district court trial schedule thwarts the CBM statute's purpose and is contrary to the

strong presumption in favor of staying litigation in view of CBM institutions. *See* AIA

§ 18 (b)(1); Ex. 1060, 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen.

Schumer). Because of the District Court's inaction relative to the pending stay

motions, Petitioner filed a Petition for Writ of Mandamus at the Federal Circuit on

May 22, 2014. *See* Ex. 1061. Thus, Petitioner has sought all remedies possible in the

3

Federal courts to effectuate Congress's intent to reduce duplicative litigation.

Petitioner therefore asks the Board to expedite the schedule in these CBMs so that it

may reach final decision prior to the District Court trial. Having a Final Written

Decision in these proceedings prior to the District Court trial could moot the District

Court case entirely, or at least reduce the issues that the parties litigate.

## II.    PETITIONER PROPOSES A SCHEDULE THAT DOES NOT PREJUDICE PATENT OWNER OR THE BOARD

The proposed schedule would move Due Date 1 by two weeks, and Due Dates

2 and 3 by one month, so that the oral argument in these proceedings may take place

early enough to enable the Board to issue a Final Written Decision before the District

Court trial. A two-week to one-month shift in deadlines should not be overly

burdensome to any of the parties, and is borne largely by the Petitioner, or at least

equally by both Petitioner and Patent Owner.

### A.    The Expedited Schedule Will Not Overwhelm Patent Owner in View of the Other Pending Post-Grant Proceedings or Litigation Obligations

On the Initial Conference Call, Patent Owner noted that other post-grant

proceedings have been filed and suggested that the filing of multiple post-grant

proceedings somehow comprises an effort to harass and overwhelm the Patent

Owner. Ex. 1057 at 20:13-21:2. The facts, however, indicate otherwise. Patent Owner

has mustered resources to simultaneously sue 135 defendants and seeks an aggressive

discovery schedule in district court (following a history of enforcing the same patents, sometimes through to trial, in litigations dating back to 2002). Patent Owner has, for example, served interrogatories on all current defendants and noticed 75 depositions over the next four weeks, and a Markman hearing is set for September 26, 2014. That a handful of defendants (*i.e.*, three) filed Petitions for Covered Business Method Review or Inter Partes Review is certainly an expected consequence of such action. And Patent Owner retained separate, non-litigation counsel with significant familiarity with these patents to defend the PTO proceedings. Indeed, Mr. Hershkovitz, Patent Owner's counsel for the post-grant proceedings, explained that Patent Owner selected his firm because it is "the most familiar firm with . . . these particular patents "the most familiar firm with these particular patents," having served for the past 8 years as reexamination counsel in three reexaminations. Ex. 1057 at 19:24-20:6. Mr. Hershkovitz is therefore uniquely qualified to handle a modestly expedited schedule, where the instituted grounds present purely legal issues that should be resolved based on legal principles and on the intrinsic record of the patents, with which Mr. Hershkovitz should already be familiar.

Furthermore, the proposed schedule would not interfere with the other pending post-grant proceedings in a prejudicial manner. Petitioner's proposed schedule for CBM2014-00020 and -00021 would result in little overlap with due dates in the other post-grant proceedings. Patent Owner's last substantive submission in

CBM2014-00020
CBM2014-00021
Petitioner's Request for Expedited Determination of Patentability

Petitioner's proposed expedited schedule would be on July 15, 2014—one day after

institution decisions are due in CBM2014-00056 and -00057 (July 14, 2014), and about

two months before the institution decisions are due in IPR2014-00489, -00490, and -

00491(September 8, 2014) and CBM2014-00087 and -00088 (September 22, 2014).

Petitioner's Reply in the proposed expedited schedule would be due August 29, 2014,

completing the briefing in CBM2014-00020 and -00021 ahead of institution decisions

in IPR2014-00489, -00490, and -00491, and CBM2014-00087 and -00088, and

therefore ahead of any Patent Owner discovery or Patent Owner Response in those

proceedings.

Further, because the grounds for invalidity in these proceedings constitute

purely legal issues based on 35 U.S.C. §§ 101 and 112, the parties in these proceedings

should require minimal discovery. Patent Owner and Petitioner have already briefed

the key issues in their preliminary papers, and Patent Owner admits that the §§ 101

and 112 issues presented "focus[] exclusively on the words and teachings of the

patent." Ex. 1062 at 23. Furthermore, the Board has already construed the relevant

claim terms in its Institution Decision. Thus, these proceedings are well-suited for an

expedited schedule.

**B.    The Proposed Expedited Schedule Would Satisfy the Statutory Requirements**

The proposed expedited schedule would not deny either party relevant discovery for the legal issues presented. And, by shortening the overall response periods for each party by only two weeks to one month, the proposed schedule provides adequate briefing time. Petitioner's proposed schedule begins with the assumption that the Board will decide whether to expedite these proceedings shortly after Patent Owner's Opposition paper, and accounts for the statutorily required Patent Owner's Response, 35 U.S.C. § 326(a)(8), any necessary Patent Owner discovery, 35 U.S.C. § 326(a)(5), Patent Owner's Motion to Amend, 35 U.S.C. § 326(d), oral hearing rights, 35 U.S.C. § 326(a)(10), and Petitioner's written comments, 35 U.S.C. § 326(a)(12). Petitioner also notes that the Patent Owner has not stated any intention to actually file a Motion to Amend. Ex. 1057 at 6:16-18. If a Motion to Amend is not filed, then Due Date 3 would become moot—ending Patent Owner's substantive briefing on July 15, 2014.

The chart below provides a summary of Petitioner's proposed expedited schedule.

| June 11, 2014 | Patent Owner's Opposition Brief to Petitioner's Request for Expedited Determination |
|---|---|
| **July 15, 2014** | **DUE DATE 1**: Patent Owner Response; Patent Owner Motion to Amend |
| **August 29, 2014** | **DUE DATE 2**: Petitioner Reply; Petitioner Opposition to Motion to Amend (if applicable) |

CBM2014-00020
CBM2014-00021
Petitioner's Request for Expedited Determination of Patentability

| September 29, 2014 | **DUE DATE 3**: Patent Owner Reply to Opposition to Motion to Amend (if applicable) |
| --- | --- |
| October 2014 | Proceedings ready for Oral Hearing at Board's convenience |

## III.    CONCLUSION

For the reasons stated above, FIS respectfully requests that the Board expedite

the CBM review of U.S. Patent No. 5,910,988 and U.S. Patent No. 6,032,137 under 35

U.S.C. §§ 101 and 112.

Date: June 2, 2014                    Respectfully submitted,

_____
Erika H. Arner, Lead Counsel
Darren M. Jiron, Backup Counsel
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
11955 Freedom Drive
Reston, VA 20190

***Attorneys for Petitioner Fidelity National
Information Services, Inc.***

CBM2014-00020
CBM2014-00021
Petitioner's Request for Expedited Determination of Patentability

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Request for Expedited

Determination of Patentability Under 35 U.S.C. §§ 101 and 112 was served to Lead

and Back-up Counsel for DataTreasury Corporation at the service e-mail addresses

below provided in DataTreasury Corporation's Mandatory Notices. The parties have

agreed to electronic service.

> Abraham Hershkovitz
> Eugene Rzucidlo
> Hershkovitz & Associates, PLLC
> 2845 Duke Street
> Alexandria VA 22314
> AHershkovitz@Hershkovitz.net
> GRzucidlo@Hershkovitz.net
> Patent@Hershkovitz.net

Date:  June 2, 2014                    By: /Jacob T. Mersing/_____
                                       Jacob T. Mersing

                                       **FINNEGAN, HENDERSON,
                                       FARABOW, GARRETT &
                                       DUNNER, L.L.P.**

9

# EXHIBIT Y

## UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

Fidelity National Information Services, Inc., *Petitioner*

v.

DATATREASURY CORPORATION, *Patent Owner*

———————————

CBM2014-00020

———————————

U.S. Patent No. 6,032,137

———————————

### PATENT OWNER'S LIST OF PROPOSED MOTIONS

Patent Trial and Appeal Board
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, Virginia 22313-1450

Honorable Judges:

Pursuant to Fed. Reg. Vol. 77, No. 157, Section IIE: Petitions and Motions Practice, Initial Conference Call ("the Trial Practice Guide"), in view of the Patent Trial and Appeal Board ("Board") mailing a Decision on April 29, 2014 instituting Trial in the above-identified Post-Grant Review based on underlying US Patent No. 6,032,137 ("the '137 Patent"), and in advance of the Initial Conference Call scheduled for May 29, 2014, DATATREASURY CORPORATION ("Patent Owner")

gives notice that it may file the following Motions, if necessitated by these Proceedings:

1.    Motion to Amend the '137 Patent under 37 CFR §42.221, after conferring with the Board;

2.    Motion to Exclude Evidence under 37 CFR §42.64(c), which may be submitted in advance of the deadline specified in the Scheduling Order;

3.    Motion for Additional Discovery (*e.g.*, in view of secondary considerations); and

4.    Motion for Observation on Cross-Examination.

Patent Owner also gives notice that it may file a Request for Oral Hearing (in the time period stipulated in these Proceedings).

While Patent Owner believes that the above List of Proposed Motions is accurate, due to the evolving nature of these Proceedings, Patent Owner does not intend to waive its ability to file any other Motions (or Requests, Oppositions, etc.) permitted by statute or as otherwise authorized by the Board. As indicated in the Trial Practice Guide, submission of a List does not preclude the filing of additional Motions, after conferring with the Board, that are not contained in the List.

No fee is required for entry and grant of this list of Proposed Motions.

Evidence of service of this list is attached as the last page.

CBM2014-00020                                USP 6,032,137

The Board is invited to direct any questions to the undersigned at the contact

e-mail addresses and telephone number given below.

Respectfully submitted,
DATATREASURY CORPORATION

/Abe Hershkovitz/
Abraham Hershkovitz
Reg. No. 45,294
AHershkovitz@Hershkovitz.net

Eugene C. Rzucidlo
Reg. No. 31,900
GRzucidlo@Hershkovitz.net

Date: May 27, 2014

Hershkovitz & Associates, PLLC
Telephone 703-370-4800
Customer No. 0000040401

CBM043263-FN.A04; AH/GR/pjj

3

CBM2014-00020                                    USP 6,032,137

**CERTIFICATE OF SERVICE**

It is hereby certified that the attached PATENT OWNER'S LISTO F PROPOSED MOTIONS, as well as this Certificate of Service, **are being served on May 27, 2014 by electronic mail** on Petitioner at the service address for Petitioner as identified in the USPTO records:

Erika H. Arner
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
11955 Freedom Dr., Reston, VA 20190-5675
E-Mail FIS-Ballard@finnegan.com
Telephone 571-203-2700
Facsimile 202-408-4000


        /Abe Hershkovitz/
Abraham Hershkovitz
Reg. No. 45,294

# EXHIBIT Z

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE PATENT TRIAL AND APPEAL BOARD**

———————

Fidelity National Information Services, Inc., *Petitioner*

v.

DATATREASURY CORPORATION, *Patent Owner*

———————

CBM2014-00021

———————

U.S. Patent No. 5,910,988

———————

## PATENT OWNER'S LIST OF PROPOSED MOTIONS

Patent Trial and Appeal Board
United States Patent and Trademark Office
P. O. Box 1450
Alexandria, VA 22313-1450

Honorable Judges:

Pursuant to Fed. Reg. Vol. 77, No. 157, Section IIE: Petitions and Motions Practice, Initial Conference Call ("the Trial Practice Guide"), in view of the Patent Trial and Appeal Board ("Board") mailing a Decision on April 29, 2014 instituting Trial in the above-identified Post-Grant Review based on underlying US Patent No. 5,910,988 ("the '988 Patent"), and in advance of the Initial Conference Call scheduled for May 29, 2014, DATATREASURY CORPORATION ("Patent Owner")

gives notice that it may file the following Motions, if necessitated by these Proceedings:

1.    Motion to Amend the '988 Patent under 37 CFR §42.221, after conferring with the Board;

2.    Motion to Exclude Evidence under 37 CFR §42.64(c), which may be submitted in advance of the deadline specified in the Scheduling Order;

3.    Motion for Additional Discovery (*e.g.*, in view of secondary considerations); and

4.    Motion for Observation on Cross-Examination.

Patent Owner also gives notice that it may file a Request for Oral Hearing (in the time period stipulated in these Proceedings).

While Patent Owner believes that the above List of Proposed Motions is accurate, due to the evolving nature of these Proceedings, Patent Owner does not intend to waive its ability to file any other Motions (or Requests, Oppositions, etc.) permitted by statute or as otherwise authorized by the Board. As indicated in the Trial Practice Guide, submission of a List does not preclude the filing of additional Motions, after conferring with the Board, that are not contained in the List.

No fee is required for entry and grant of this list of Proposed Motions.

Evidence of service of this list is attached as the last page.

The Board is invited to direct any questions to the undersigned at the contact

e-mail addresses and telephone number given below.


                                        Respectfully submitted,
                                        DATATREASURY CORPORATION

                                        _____/Abe Hershkovitz/_____
                                        Abraham Hershkovitz
                                        Reg. No. 45,294
                                        AHershkovitz@Hershkovitz.net

                                        Eugene C. Rzucidlo
                                        Reg. No. 31,900
                                        GRzucidlo@Hershkovitz.net

Date: May 27, 2014_____

Hershkovitz & Associates, PLLC
Telephone 703-370-4800
Customer No. 0000040401

CBM043262-FN.A04; AH/GR/pjj

USP 5,910,988

**CERTIFICATE OF SERVICE**

It is hereby certified that the attached PATENT OWNER'S LIST O F PROPOSED MOTIONS, as well as this Certificate of Service, **are being served on May 27, 2014 by electronic mail** on Petitioner at the service address for Petitioner as identified in the USPTO records:


Erika H. Arner
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
11955 Freedom Dr., Reston, VA 20190-5675
E-Mail FIS-Ballard@finnegan.com
Telephone 571-203-2700
Facsimile 202-408-4000



_____/Abe Hershkovitz/_____
Abraham Hershkovitz
Reg. No. 45,294